**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALLISON HETRICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND LEARNING, LLC,<br><br>Defendant. | Civil Action No. 1:25-CV-10103-NMG<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ASCEND LEARNING, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Ascend's ATI Website Helps Students Prepare for Nursing Exams. ..... 2

II. Plaintiff Alleges Only Limited Interactions with ATI's Website. ..... 4

III. Plaintiff's Challenge to the Meta Pixel. ..... 4

ARGUMENT ..... 6

I. Without Even Putting Ascend on Notice of the Allegations Against It, the Complaint Must Be Dismissed for Failure to Satisfy Rule 8. ..... 6

II. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) for Failure to State a Claim. ..... 9

A. Plaintiff's Limited Allegation that Ascend Discloses Subscription Information Fails to Allege a Violation of the VPPA. ..... 9

B. Even If the VPPA's Definition of PII Somehow Reached Disclosure of a Subscription, the VPPA's Exception Permits Any Such Disclosure. ..... 13

C. Plaintiff's Theory Should Be Rejected as an Unwarranted Expansion of the Term, "Video Tape Service Provider." ..... 14

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Am.'s Test Kitchen, LP*,
680 F. Supp. 3d 31 (D. Mass. 2023) ....15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....9

*Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.*,
2022 WL 407409 (D. Mass. Feb. 10, 2022) ....3

*Cousart v. OpenAI LP*,
2024 WL 3282522 (N.D. Cal. 2024) ....8

*FTC v. Amazon.com, Inc.*,
2015 WL 11256312 (W.D. Wash. Aug. 3, 2015) ....11

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ....11

*Gonzalez v. Cent. Elec. Coop., Inc.*,
2009 WL 3415235 (D. Or. 2009) ....11

*Hasan v. Educ. Comm'n for Foreign Med. Graduates*,
2024 WL 5008882 (D. Mass. Dec. 6, 2024) ....7

*Louth v. NFL Enters. LLC*,
2022 WL 4130866 (D. R. I. Sept. 12, 2022) ....12

*M.K. v. Google LLC*,
2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) ....6, 7, 8

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ....11

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....9

*Rancourt v. Meredith*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ....15

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ....13

*Sarvis v. Polyvore, Inc.*,
2013 WL 4056208 (D. Mass. Aug. 9, 2013) ....3

*Saunders v. Hearst TV, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ....................15

*Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.)*,
263 F. Supp. 2d 140 (D. Mass. 2003) ....................6, 7

*United States v. Shultz*,
2018 WL 534333 (D. Kan. Jan. 24, 2018) ....................11

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ....................12

**Statutes**

18 U.S.C. § 2710 .................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2), 8(d)(1) ....................6

Fed. R. Civ. P. 12(b)(6) ....................9

Complaint, *Kueppers et. al v. Zumba Fitness, LLC*,
No. 24-cv-61983 (S.D. Fla. Oct. 23, 2024) ....................7

Complaint, *Lindekugel et. al v. Strafford Publ'ns, LLC et. al*,
No. 1:24-cv-05642 (N.D. Ga. Dec. 9, 2024) ....................7

Complaint, *Lovett v. Continued.Com, LLC*,
No. 1:24-cv-00590 (S.D. Ohio Oct. 10, 2024) ....................7

## INTRODUCTION

Plaintiff's Complaint asserts one claim, for violation of the federal Video Privacy Protection Act, 18 U.S.C. § 2710, even though the Complaint does not and cannot allege that Defendant Ascend Learning, LLC discloses any video information in violation of the Act. To try, the Complaint offers only subterfuge. The Complaint alleges that Ascend and one of its websites disclose to a third party (via the Meta Pixel, an advertising technology commonly used in websites) *either* information about a consumer's purchase of videos from the website (www.atitesting.com) *or* about a consumer's purchase of a subscription to the website. This allegation fails to state a claim for any number of reasons.

First, the allegation is meaningless. To allege that *either* Ascend discloses prohibited information to a third party *or* that Ascend discloses something else entirely is to allege nothing at all. This allegation simply fails to provide Ascend with notice of the claim against it. For that reason, the Complaint cannot even satisfy the basic requirements of Rule 8.

Second, what the Complaint later makes clear is that Plaintiff knows full well that Ascend does not disclose information about a consumer's purchase of videos from its website to a third party. Instead, the Complaint defines "Private Video Information" to mean "a subscription to access prerecorded video content," and then repeatedly alleges that *this*—the mere fact of a subscription—is what Ascend unlawfully discloses. (Dkt. 1 ¶ 3; *see also id*. ¶¶ 4, 6, 12, 13, 68-70.) But the VPPA does not prohibit the disclosure of a consumer's purchase of a subscription to a website, even if that subscription permits the consumer to later purchase or access videos. The VPPA prohibits only the disclosure of "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider."18 U.S.C. § 2710(a)(3) (emphasis added). Put simply, the VPPA prohibits only the disclosure of *video* information, and a subscription does not count as video information.

That puts an end to Plaintiff's Complaint.

If that were not enough, though, the Complaint fails for other reasons. The VPPA contains an exception that allows the disclosure of names and addresses—and even the subject matter of videos—if the defendant provides the consumer the ability to opt out and if the disclosure is for marketing purposes. 18 U.S.C. § 2710(b)(2)(D). Plaintiff alleges that the purpose of the alleged disclosure here is for marketing purposes, and there is no question that Ascend offers its customers the right to opt out.

And Ascend cannot even be considered a "video tape service provider" in the first place. Ascend provides content and services, including software tools and analytic solutions, primarily to institutions like nursing schools. Educators, administrators, and students use Ascend's services to support schools' program curriculum and students' mastery of content necessary for professional practice. Any use of videos on Ascend's websites is ancillary to that overall purpose and is dwarfed by the non-video content and services Ascend offers. Under any test the Court uses, therefore, Ascend is not even subject to the VPPA.

For any of these reasons, the Complaint must be dismissed with prejudice.

## BACKGROUND

### I. Ascend's ATI Website Helps Students Prepare for Nursing Exams.

Ascend is a leading provider of educational content and software tools in a variety of industries, including healthcare. (Dkt. 1 ¶ 14.) One of Ascend's healthcare businesses, Assessment Technologies Institute, LLC, is a leading provider of educational resources and assessments, offering products and services to nursing programs to help nursing students with

their curriculum, graduation, and preparation for the National Council Licensure Examination ("NCLEX").[1] (*See id.* ¶¶ 16-17.)

Primarily in connection with its provision of services to nursing schools, ATI offers on its website, www.atitesting.com, a full range of student-facing services designed to help students master the nursing curriculum, successfully graduate from nursing school, and succeed on the NCLEX. (*Id.* ¶¶ 9, 15-17.) ATI's range of products includes books to review certain topics, online coaching for the NCLEX, and practice quizzes. (*See, e.g.*, Test your A&P knowledge, ATI, https://www.atitesting.com/anatomy-and-physiology (last visited Apr. 4, 2025) (Ex. B) ("A&P Online Practice Test" offers access to 70 multiple-choice questions and a score report).)

The subscriptions ATI offers to its website also span a wide range. ATI offers at least 40 different subscription options on its website.[2] While some of the subscriptions include access to videos, not all do. For example, "Pharmacology Made Easy 5.0" has 13 modules, including

[1] *See also* Why ATI, ATI, https://www.atitesting.com/about (last visited Apr. 4, 2025) (Ex. A). "Ex." refers to exhibits to the accompanying Declaration of Mark David McPherson. The Complaint cites the ATI website, along with other websites Ascend maintains (though Plaintiff does not allege she ever interacted with Ascend's other websites). (Dkt. 1 ¶ 2.) The Complaint rests entirely on what the ATI website offers, how Plaintiff interacted or interacts with it, and what information is disclosed through it. For that reason, as well as the fact that the contents of ATI's website are not subject to dispute, the Court may take judicial notice of ATI's website including the particular pages cited to it, as more fully detailed in the accompanying request for judicial notice. *Sarvis v. Polyvore, Inc.*, 2013 WL 4056208, at *4 n.3 (D. Mass. Aug. 9, 2013) ("This court takes judicial notice of the images on defendant's website as 'official public records; . . . documents central to the plaintiff's claim; or . . . documents sufficiently referred to in the complaint.' Alternately, this court takes judicial notice of the Polyvore.com screenshots as information publicly displayed on a party's own website."); *Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.*, 2022 WL 407409, at *4 (D. Mass. Feb. 10, 2022).

[2] Elevate your nursing journey with ATI, ATI, https://www.atitesting.com/solutions (last visited Apr. 4, 2025) (Ex. C).

video case studies of medications used in clinical settings, while "Learning Strategies: Your Guide to Classroom and Test-Taking Success" includes a research-based book only.[3]

## II. Plaintiff Alleges Only Limited Interactions with ATI's Website.

Plaintiff Allison Hetrick alleges that in or around March 2024, she subscribed to ATI's website by registering and paying for a subscription and providing her personal information. (Dkt. 1 ¶ 9.) Plaintiff does not identify the subscription she allegedly purchased. (*Id.*) She merely alleges that *after* she purchased a subscription, she "used her subscription . . . to request and obtain pre-recorded videos from Defendant." (*Id.* ¶ 10.)

Plaintiff also alleges that she "had a Meta account, a Meta profile, and [a Facebook ID] associated with such profile." (*Id.* ¶¶ 8, 11.)

## III. Plaintiff's Challenge to the Meta Pixel.

Most of Plaintiff's Complaint is devoted to bemoaning the state of online privacy, without any specific application to Ascend or ATI's website. Of the Complaint's 87 paragraphs, 17 are about the "data mining industry" (*Id*. ¶¶ 28-44) (including 3 paragraphs about the industry's unique threat to the "elderly," a group to which Plaintiff does not allege she belongs), plus an additional 15 paragraphs about the "Meta Pixel" in general (*id*. ¶¶ 46-61).

As Plaintiff describes it, the Meta Pixel is "a unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta[,] allow[ing] companies . . . to build detailed profiles about their customers and to serve them with highly targeted advertising." (*Id.* ¶ 47.) According to her, "a

---

[3] Pharmacology Made Easy, ATI, https://www.atitesting.com/pharmacology/pharmacology-made-easy (last visited Apr. 4, 2025) (Ex. D); Learning Strategies: Your Guide To Classroom and Test-Taking Success, https://www.atitesting.com/pre-nursing-school/learning-strategies (last visited Apr. 4, 2025) (Ex. E).

Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'" (*Id.* ¶ 48.)

Plaintiff alleges that Ascend uses the "Meta Pixel" on a handful of websites she alleges Ascend operates and maintains, including ATI's website. (Dkt. 1 ¶¶ 2, 15, 18.)

Yet the Complaint is vague—perhaps intentionally so—about what precise information Plaintiff alleges the Meta Pixel discloses. The Complaint uses two different formulations. Often, the Complaint alleges that "[t]he information Defendant disclosed (and continues to disclose) to Meta via the Meta Pixel includes the customer's Facebook ID ('FID'), the title and URL corresponding to the specific prerecorded video *or* the subscription that each of its customers purchased on any one of its Websites." (Dkt. 1 ¶ 3 (emphasis added).) While Plaintiff repeats this formulation a handful of times (*see, e.g.*, *id*. ¶¶ 45, 63, or 83), the "or" in that phrase precludes Plaintiff from being able to allege that Ascend discloses to Meta "the title and URL corresponding to the specific prerecorded video . . . its customers purchased." (*Id*. ¶ 3.) The most Plaintiff can allege is that *either* Ascend discloses such information *or* it merely discloses "the subscription" that a consumer purchases. (*Id*.)

The rest of the Complaint gives up Plaintiff's sleight of hand. Later in paragraph 3, Plaintiff defines "information that reveals a particular person purchased a subscription to access prerecorded video content" as "Private Video Information," even though neither that term nor the information Plaintiff uses that term to describe is found in the VPPA. At least 19 other times, the Complaint alleges that Ascend discloses "Private Video Information"—again, a term that Plaintiff uses to describe not a specific video anyone purchased, but merely "a subscription to access prerecorded video content." (Dkt. 1 ¶ 3; *see also id*. ¶¶ 4, 6, 12, 13, 68-70.)

On the basis of these vague allegations, Plaintiff seeks to represent a class of all persons who, during the two years before she filed the Complaint, allegedly "purchased prerecorded videos or a subscription to access prerecorded video material or services from any one of Defendant's family of Websites while maintaining an account with Meta." (Dkt. 1 ¶ 72.) (Although Plaintiff thus seeks to represent a class of subscribers to websites Ascend maintains other than ATI's, Plaintiff does not allege she interacted with any Ascend website except for ATI's website.)

## ARGUMENT

### I. Without Even Putting Ascend on Notice of the Allegations Against It, the Complaint Must Be Dismissed for Failure to Satisfy Rule 8.

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to provide defendant "fair notice of what the plaintiff's claim is and the grounds upon which such claim rests." *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.)*, 263 F. Supp. 2d 140, 148 (D. Mass. 2003); *see* Fed. R. Civ. P. 8(a)(2), 8(d)(1) (allegations must be "simple, concise, and direct"); *M.K. v. Google LLC*, 2023 WL 2671381, at *2 (N.D. Cal. Mar. 27, 2023) (complaint must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation").

Plaintiff's Complaint cannot satisfy even this most basic requirement of Rule 8. The Complaint contains nothing indicating what Ascend allegedly does to violate the VPPA's provisions. At its core, the Complaint alleges—at most—*either* that Ascend discloses to Meta "the title and URL corresponding to the specific prerecorded video *or* the subscription that each of its customers purchased on any one of its Websites." (Dkt. 1 ¶ 3 (emphasis added).)

What, then, is Plaintiff's claim? That Ascend discloses to Meta the title and URL corresponding to the specific prerecorded video? If that were the allegation, Ascend could

demonstrate, as it has already demonstrated for Plaintiff, that its website surely does not do so. There is simply no basis for such an allegation. Or does Plaintiff mean to allege merely that Ascend discloses to Meta "the subscription that each of its customers purchased on any one of its Websites"—a disclosure of no video information at all? (Dkt. 1 ¶ 3.) The Complaint cannot answer even this fundamental question, leaving Ascend and the Court to guess at what the Complaint charges.

Instead of identifying the practice Plaintiff challenges, the Complaint defines "information that reveals a particular person purchased a subscription to access prerecorded video content on Defendant's Websites" as "Private Video Information" (Dkt. 1 ¶ 3), and then repeatedly alleges that a disclosure of such information violates the VPPA. (*See, e.g.*, *id*. ¶¶ 4-6.) Elsewhere, the Complaint merely uses "formulaic language that largely parrots the language of the VPPA," *Google LLC*, 2023 WL 2671381, at *3 (*see, e.g.*, Dkt. 1 ¶¶ 82-83), with the allegations so vague that counsel can file (and is filing) essentially the same complaint around the country. *See, e.g.*, Complaint, *Kueppers et. al v. Zumba Fitness, LLC*, No. 24-cv-61983 (S.D. Fla. Oct. 23, 2024); Complaint, *Lovett v. Continued.Com, LLC*, No. 1:24-cv-00590 (S.D. Ohio Oct. 10, 2024); Complaint, *Lindekugel et. al v. Strafford Publ'ns, LLC et. al*, No. 1:24-cv-05642 (N.D. Ga. Dec. 9, 2024).

This pleading technique does not satisfy Rule 8's requirement to provide Ascend with "fair notice of what the plaintiff's claim is and the grounds upon which such claim rests." *Superior Kitchen Designs*, 263 F. Supp. 2d at 148; *Hasan v. Educ. Comm'n for Foreign Med. Graduates*, 2024 WL 5008882, at *2 (D. Mass. Dec. 6, 2024) (dismissing complaint where bare and conclusory allegations did not comply with the pleading standards of Fed. R. Civ. P. 8(a) and

noting a "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why").

Instead of identifying the basis for Plaintiff's claim against Ascend, the bulk of the Complaint attempts to paint a bleak picture of privacy in the digital era, but fails to tie Ascend to this supposedly "Orwellian" world. (*See, e.g.*, Dkt. 1 ¶¶ 38 ("entire black market exists while the personal information of vulnerable elderly Americans is exchanged"); 60 ("Meta then monetizes this Orwellian database").) Plaintiff recites the requirements and history of the VPPA, and spends approximately 30 paragraphs describing the Meta Pixel and "privacy concerns," but offers no specific allegations against Ascend. All Plaintiff offers about Ascend is that it discloses specific video information *or* that it does not disclose specific video information, just the type of "unadorned accusation" Rule 8 prohibits. (Dkt. 1 ¶ 3.) *Google LLC*, 2023 WL 2671381, at *2; *Cousart v. OpenAI LP*, 2024 WL 3282522, at *1 (N.D. Cal. 2024) (failure to comply with Rule 8 where "the complaint is not only excessive in length, but also contains swaths of unnecessary and distracting allegations making it nearly impossible to determine the adequacy of the plaintiffs' legal claims").

Ascend cannot defend against an allegation that covers the two ends of the spectrum: disclosure *or* non-disclosure. Even if one removed the "or" from Plaintiff's allegation, there is no information about how Ascend supposedly discloses information about specific videos to Meta, as required and as discussed in more detail below. Because the Complaint fails to provide sufficient detail showing Plaintiff is entitled to relief and putting Ascend on notice of her claim, the Court should dismiss the Complaint for failure to meet Rule 8's basic requirements.

## II. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) for Failure to State a Claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements" do not suffice. *Id*.

To plead a plausible claim for violation of the VPPA, Plaintiff must allege that (1) Ascend is a "video tape service provider," (2) Ascend knowingly disclosed "personally identifiable information concerning any consumer of such provider," and (3) the disclosure was "not authorized by section 2710(b)(2)." 18 U.S.C. § 2710(b); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiff does not plausibly plead these elements.

### A. Plaintiff's Limited Allegation that Ascend Discloses Subscription Information Fails to Allege a Violation of the VPPA.

Even were the Court to find that Plaintiff's allegations satisfy Rule 8, Plaintiff cannot plausibly allege that Ascend disclosed to Meta "personally identifiable information," as defined in the VPPA. The VPPA prohibits disclosure of "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). The Complaint does not provide any allegation, much less a plausible one, that Ascend discloses such information.

Instead, to review the Complaint again, Plaintiff alleges *either* that Ascend discloses to Meta "the title and URL corresponding to the specific prerecorded video *or* the subscription that each of its customers purchased on any one of its Websites." (Dkt. 1 ¶ 3.) The Complaint's sleight of hand is designed to obscure that Plaintiff cannot allege that Ascend discloses to Meta "specific prerecorded video" that a consumer purchases. Instead, that paragraph of the Complaint

later defines "information that reveals a particular person purchased a subscription to access prerecorded video content on Defendant's Websites" as "Private Video Information" (*id.*), and the Complaint then repeatedly alleges that disclosure of such information violates the VPPA. (*See, e.g.*, *id*. ¶¶ 4-6.) In other words, there is nothing in the Complaint supporting an allegation that Ascend discloses to Meta "the title and URL corresponding to the specific prerecorded video"; the most Plaintiff alleges, as the Complaint acknowledges with its persistent reliance on the Complaint's invention of the term "Private Video Information," is that Ascend discloses "the subscription that each of its customers purchased on any one of its Websites." (*Id.* ¶ 3.)

But defining "subscription" to mean "video information" does not make it so, and nothing in the VPPA prohibits disclosing to a third party a "subscription." The VPPA prohibits the disclosure of "specific video materials or services requested or obtained." 18 U.S.C. § 2710(a)(3). A subscription to ATI's website is simply not a "specific video material or service." As noted, a subscription to ATI's website grants a consumer access to any number of services that have nothing to do with videos. (*See supra* n. 2.) Indeed, Plaintiff does not allege that the "subscription" or plan she purchased on the ATI website included even a single video. It could be that her subscription entitled her to take a series of practice tests or view online books,[4] and nowhere does Plaintiff allege that her subscription necessarily involved the viewing of a prerecorded video.[5]

---

[4] Review Module Package, ATI, https://www.atitesting.com/review-module-package (last visited Apr. 4, 2025) (Ex. F) ("Review Module Package" offers access to nine books); Test your A & P knowledge, ATI, https://www.atitesting.com/anatomy-and-physiology (last visited Apr. 4, 2025) (Ex. B) ("A&P Online Practice Test" offers access to 70 multiple-choice questions and a score report).

[5] Plaintiff alleges that she "used her subscription to Defendant's website to request and obtain pre-recorded videos from Defendant," (Dkt. 1 ¶ 10), but she does not allege—and could not allege—that Ascend disclosed any such specific purchase. In other words, she alleges merely that Ascend disclosed the fact that she purchased a subscription, not that Ascend disclosed

Plaintiff's allegation that Ascend disclosed "information that reveals a particular person purchased a subscription to access prerecorded video content on Defendant's Websites"—the only thing Plaintiff means with her repeated references to "Private Video Information" (Dkt. 1 ¶ 3)—is thus not enough to establish a violation of the VPPA. *See* 18 U.S.C. § 2710(a)(3) (requiring disclosure of "specific" videos "requested or obtained"); *United States v. Shultz*, 2018 WL 534333, at *3 (D. Kan. Jan. 24, 2018) (PII is "information that identifies a specific person *and* ties that person to *particular videos that the person watched*.") (emphasis added); *FTC v. Amazon.com, Inc.*, 2015 WL 11256312, at *3 (W.D. Wash. Aug. 3, 2015) (rejecting the argument that identifying customers denied a refund for in-app purchases violates the VPPA because no specific video information was requested).

Even if Plaintiff could allege that Ascend disclosed a subscription that included prerecorded video content—and the Complaint does not—such an allegation would still fall short of a VPPA violation. Ascend is unaware of any court ever holding that anything other than a disclosure of a specific video suffices for a VPPA violation. *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (holding plaintiff adequately alleged that Today.com disclosed PII within the meaning of the VPPA by disclosing "the viewed video's URL and name"); *Gonzalez v. Cent. Elec. Coop., Inc.*, 2009 WL 3415235, at *11 (D. Or. 2009) (finding that Doubletree did not violate the VPPA because the disclosure of plaintiff's purchase of one of 15 movies without specifying the movie does not constitute PII); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284-85 (S.D.N.Y. 2023) ("disclosing to a third party the title of the

---

specific video information she later "requested or obtained" with that subscription. (*See Id.* ¶¶ 67, 71, 72, 85.)

webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page.”).

Plaintiff cannot stretch the First Circuit’s decision in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016), to help state a claim here. There, the First Circuit stated that “personally identifiable information” includes “information *reasonably and foreseeably likely to reveal* which [] videos [the consumer] has obtained.” *Id.* (emphasis added). But there was no dispute in *Yershov*, or in any subsequent cases relying on that articulation of PII, that the defendant disclosed *specific video content*. *See, e.g.*, *id*. at 484 (disclosed “the title of the video viewed”); *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *3 (D. R. I. Sept. 12, 2022) (disclosed “user’s video ID which identifies the video that is being watched”). Far from considering whether the disclosure of a subscription itself “reasonably and foreseeably” reveals specific video information, the *Yershov* court considered only whether, along with the disclosure of “the title of the video viewed,” GPS coordinates coupled with identifiers associated with the user’s device sufficiently “identif[ied] a person” to count as PII. *Yershov*, 820 F.3d at 486 (noting that “PII is not limited to information that explicitly names a person”).

At bottom, the Video Privacy Protection Act only prohibits the disclosure of *video* information to third parties. That requirement is in the title, purpose, and text of the statute. All Plaintiff alleges, at most, is that Ascend discloses subscription information to Meta, and Plaintiff cannot manufacture a VPPA claim by defining “subscription” to mean “video.” It simply is not, and Plaintiff has no factual, textual, or legal support for any argument to the contrary. For this reason alone, Plaintiff’s VPPA claim fails at the start, even without considering whether the VPPA’s exceptions permit Ascend’s alleged disclosure (they do), or whether Ascend counts as a “video tape service provider” (it does not).

### B. Even If the VPPA's Definition of PII Somehow Reached Disclosure of a Subscription, the VPPA's Exception Permits Any Such Disclosure.

The VPPA includes a number of exceptions, one of which Plaintiff might argue informs the meaning of "personally identifiable information." Section 2710(b)(2)(D) permits the disclosure of consumers' "names and addresses," as well as the "subject matter of any video tapes or other audio visual material" if "the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure," and in the case of disclosure of subject matter, "if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D). Contrary to Plaintiff's anticipated argument, this exception cannot be read to expand the VPPA's previous definition of "personally identifiable information." 18 U.S.C. § 2710(a)(3). As the Southern District of New York explained, the VPPA's definition of PII, notwithstanding its use of the word "including," must be read as limited to a disclosure of specific video materials. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015) ("To be PII, information must identify a specific person and must tie this person to specific video materials; it can do no less, but the scope of what constitutes PII is not otherwise limited.").

But even if the Court accepted such an argument, the exception would protect Ascend from Plaintiff's allegations here. Here, Plaintiff alleges at most that Ascend disclosed to Meta Plaintiff's name and Facebook ID (a number allegedly identifying a person's Facebook profile) and the fact that she purchased a subscription. Even if the Court construed a Facebook ID to be an "address"—and that itself is quite a stretch—Section 2710(b)(2)(D) would permit Ascend to share that information with Meta. Such a disclosure is permissible as long as "the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i). Ascend does so. *See* Your

Privacy Choices, ATI, https://www.atitesting.com/ (last visited Apr. 4, 2025) (Ex. G) (instructing, "[t]oggle this button to the left to opt out" of specified information collection and sharing); Ascend Global Privacy Policy, ATI, https://auth.atitesting.com/policy.html?_gl=1*1af0b8d*_gcl_au*OTYxNDI3MjY3LjE3NDE4NzYwNTI) (last visited Apr. 4, 2025) (providing opt-out instructions) (Ex. H).

And disclosing to Meta the subject matter of a subscription would be permissible, even if the Court were to accept Plaintiff's characterization of an ATI subscription—as a subscription to a package of videos. As we detail below, that is simply not what a subscription to ATI is, given the vast amount of non-video-related content, tools, and materials available to users of ATI products and services. *See infra*, at pgs. 15-16. But even if the Court were to accept that an ATI subscription is a subscription to a package of videos, the VPPA provides that "the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(ii). That is precisely the purpose for which the Complaint alleges Ascend shares subscription information with Meta. (*See, e.g.*, Dkt. 1 ¶ 47 (Meta Pixel "allows companies like Defendant to build detailed profiles about their customers and to serve them with highly targeted advertising.").)

**C. Plaintiff's Theory Should Be Rejected as an Unwarranted Expansion of the Term, "Video Tape Service Provider."**

Plaintiff's theory of VPPA liability should be rejected for the additional reason that it is an unwarranted expansion of the definition of "video tape service provider." The VPPA only prohibits "video tape service providers" from making the disclosures proscribed by the statute. *See* 18 U.S.C. § 2710(b)(1). The VPPA defines "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

To determine whether a defendant is a "video tape service provider," courts use different tests. The "centrality" test looks to whether "the defendant's product must not only be substantially involved in the conveyance of video content to consumer[s] but also significantly tailored to serve that purpose." *Rancourt v. Meredith*, 2024 WL 381344, at *14 (D. Mass. Feb. 1, 2024). This Court recently declined to adopt the "centrality" test, and instead focused on the plain language of whether the defendant was "engaged in the business of . . . rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.*

Yet the defendant in *Rancourt*, and in every other case within this circuit to find a defendant met the definition of video service provider, was significantly more involved in the business of video delivery than is Ascend. In those cases, the defendants' websites featured videos prominently. *See, e.g.*, *id.* at *1 ("The App contains cooking recipes, many of which 'include a text recipe accompanied by a video showing the recipe's preparation.'"); *Saunders v. Hearst TV, Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) ("Hearst hosts and delivers thousands of videos to one of every five homes in the United States.") (internal quotations omitted); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 34 (D. Mass. 2023) ("Defendants operate a website . . . which offers a variety of video content related to cooking."). ATI's website, by contrast, features subscriptions that provide much more than just videos—for example, multiple choice practice tests with detailed rationales, flash cards, and specialized review books, to name a few—and many of the available materials include no video content at all. *See* Elevate your nursing journey with ATI, ATI, https://www.atitesting.com/solutions (last visited Apr. 4, 2025) (Ex. C).

Whatever test the Court applies, therefore, Ascend is not a "video tape service provider," because Ascend's video offerings are at best ancillary to its main product offerings. ATI and its website provide products and services used by nursing programs to assist nursing students in

their studies and in exam preparation. (Dkt. 1 ¶¶ 16-17.) As discussed above, Plaintiff does not allege that ATI's offerings necessarily involve prerecorded videos, she does not allege that her subscription or plan required her to watch a prerecorded video, nor does she provide any hint of the prevalence of prerecorded videos on ATI's website (or on the other Ascend websites she lists). Indeed, just looking at ATI's website offerings, Plaintiff could not allege that ATI is "engaged in the business" of providing videos, much less that video content is "central" to its services. For instance, the package for "Dosage Calculation and Safe Medication Administration 4.0" includes "in-depth tutorials, engaging learning activities, assessment and case studies," with no mention of these features' forms.[6]

Whatever test governs whether Ascend is a "video tape service provider," then, Ascend simply does not meet that definition. 18 U.S.C. § 2710(a)(4). For that reason, too, Plaintiff's VPPA claim must be dismissed.

## CONCLUSION

For all of these reasons, Defendant respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety and with prejudice.

[6] Dosage Calculation & Safe Medication Administration, ATI, https://www.atitesting.com/pharmacology/dosage-calculation-safe-medication-administration (last visited Apr. 4, 2025) (Ex. I).

Dated: April 7, 2025

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
T: 617.570.1000
F: 617.523.1231
JChunias@goodwinlaw.com

Mark David McPherson (*pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018
T: 212.813.8869
F: 212.202.4582
MMcPherson@goodwinlaw.com

Counsel for Defendant
Ascend Learning, LLC

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)**

I, Jennifer L. Chunias, counsel for Defendant in the above-captioned action, hereby certify that counsel for Defendant conferred with counsel for Plaintiff before filing this motion, but counsel for the parties were unable to reach agreement on this motion.

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias

**CERTIFICATE OF SERVICE**

I, Jennifer L. Chunias, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 7, 2025.

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias