**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALLISON HETRICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ASCEND LEARNING, LLC,<br><br>        Defendant. | Civil Action No. 1:25-CV-10103-NMG<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ASCEND LEARNING, LLC'S MOTION TO DISMISS**
<u>**FIRST AMENDED CLASS ACTION COMPLAINT**</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

I.      Ascend's ATI Website Helps Students Prepare for Nursing Exams. ................................ 3

II.     Plaintiff Alleges Only Limited Interactions with ATI's Website. ..................................... 5

III.    Plaintiff's Challenge to the Meta Pixel and Google Analytics. ....................................... 6

ARGUMENT ................................................................................................................... 8

I.      Without Even Putting Ascend on Notice of the Allegations Against It, the Amended
        Complaint Must Be Dismissed for Failure to Satisfy Rule 8 .......................................... 8

II.     The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) for
        Failure to State a Claim .............................................................................................. 10

        A.      Plaintiff's Limited Allegation that Ascend Discloses Subscription Information
                Fails to Allege a Violation of the VPPA ............................................................. 11

        B.      Even If the VPPA's Definition of PII Somehow Reached Disclosure of a
                Subscription, the VPPA's Exception Permits Any Such Disclosure. ..................... 14

        C.      Plaintiff's Theory Should Be Rejected as an Unwarranted Expansion of the Term
                "Video Tape Service Provider." ....................................................................... 16

CONCLUSION ................................................................................................................ 18

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2) ..................................... 20

CERTIFICATE OF SERVICE ........................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Adams v. Am.'s Test Kitchen, LP,*
    680 F. Supp. 3d 31 (D. Mass. 2023) ...................................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................10

*Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.,*
    2022 WL 407409 (D. Mass. Feb. 10, 2022) ........................................................4

*Cousart v. OpenAI LP,*
    2024 WL 3282522 (N.D. Cal. 2024) .................................................................10

*FTC v. Amazon.com, Inc.,*
    2015 WL 11256312 (W.D. Wash. Aug. 3, 2015) ................................................13

*Glob. ePoint, Inc. v. GTECH Corp.*
    58 F. Supp. 3d 178, 190 (D.R.I. 2014) ..............................................................16

*Golden v. NBCUniversal Media, LLC,*
    688 F. Supp. 3d 150 (S.D.N.Y. 2023).................................................................13

*Gonzalez v. Cent. Elec. Coop., Inc.,*
    2009 WL 3415235 (D. Or. 2009).......................................................................13

*Hasan v. Educ. Comm'n for Foreign Med. Graduates,*
    2024 WL 5008882 (D. Mass. Dec. 6, 2024) ........................................................9

*M.K. v. Google LLC,*
    2023 WL 2671381 (N.D. Cal. Mar. 27, 2023)............................................8, 9, 10

*Martin v. Meredith Corp.,*
    657 F. Supp. 3d 277 (S.D.N.Y. 2023).................................................................13

*Mollett v. Netflix, Inc.,*
    795 F.3d 1062 (9th Cir. 2015) ..........................................................................11

*Rancourt v. Meredith,*
    2024 WL 381344 (D. Mass. Feb. 1, 2024) .........................................................16

*Robinson v. Disney Online,*
    152 F. Supp. 3d 176 (S.D.N.Y. 2015).................................................................14

*Sarvis v. Polyvore, Inc.,*
    2013 WL 4056208 (D. Mass. Aug. 9, 2013) ........................................................4

*Saunders v. Hearst TV, Inc.*,
    711 F. Supp. 3d 24 (D. Mass. 2024) .........................................................................17

*Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.)*,
    263 F. Supp. 2d 140 (D. Mass. 2003) ...................................................................8, 9

*United States v. Shultz*,
    2018 WL 534333 (D. Kan. Jan. 24, 2018) ..............................................................13

**Statutes**

18 U.S.C. § 2710 ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2), 8(d)(1) ..................................................................................8

Fed. R. Civ. P. 12(b)(6) ............................................................................................10

Complaint, *Lovett v. Continued.Com, LLC*,
    No. 1:24-cv-00590 (S.D. Ohio Oct. 16, 2024) .........................................................9

## INTRODUCTION

Plaintiff's effort to assert a claim under the federal Video Privacy Protection Act, 18 U.S.C. § 2710, continues to rest on semantic gamesmanship. Plaintiff's original Complaint did not (and could not) allege that Defendant Ascend Learning, LLC discloses any video information in violation of the Act. That Complaint pleaded, at most, that Ascend discloses "to Meta via the Meta Pixel … the customer's Facebook ID ('FID'), the title and URL corresponding to the specific prerecorded video *or* the subscription that each of its customers purchased on any one of its Websites." (Dkt. 1 ¶ 3 (emphasis added).) Ascend's motion to dismiss (Dkt. 20-23) pointed out that this either/or allegation failed to satisfy even the basic requirements of Rule 8, much less establish that Ascend disclosed "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider," the only thing the VPPA restricts. 18 U.S.C. § 2710(a)(3) (emphasis added).

Rather than oppose Ascend's motion, Plaintiff filed a First Amended Class Action Complaint that merely changes the words Plaintiff uses to describe Ascend's services. Just as with the original Complaint, Plaintiff's Amended Complaint includes the same either/or allegation: it alleges that Ascend "discloses to Meta information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites." (Dkt. 27 ¶ 3 (emphasis added).) In other words, all Plaintiff's Amended Complaint does is replace the term "subscription" with the phrase "video review course." While the Amended Complaint adds allegations that Ascend also uses a Google Analytics tool to disclose to Google the same information Ascend allegedly discloses to Facebook, in each case, Plaintiff continues to offer only the same either/or allegation the original Complaint offered: *either* that Ascend discloses information about a specific video *or* that Ascend discloses information about a subscription customers purchase on its website.

1

The Amended Complaint's semantic trick does nothing to help Plaintiff assert a VPPA claim. Like its predecessor, the Amended Complaint alleges only that Ascend and one of its websites disclose to a third party (Facebook or Google) *either* information about a consumer's purchase of videos from the website (www.atitesting.com) *or* about a consumer's purchase of a subscription to the website (what Plaintiff now dubs a "video review course"). This allegation fails to state a claim for any number of reasons.

First, the allegation is meaningless. To allege that *either* Ascend discloses restricted information to a third party (a specific video) *or* that Ascend discloses something else entirely (a subscription for access to unspecified videos) is to allege nothing at all. This allegation simply fails to provide Ascend with notice of the claim against it. For that reason, the Amended Complaint cannot even satisfy the basic requirements of Rule 8.

Second, Plaintiff knows full well that Ascend does not disclose information about a consumer's purchase of videos from its website to a third party. That's why the Amended Complaint never alleges without qualification that Ascend discloses a specific video purchased by a consumer. Instead, the Amended Complaint repeatedly alleges that Ascend discloses "information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites (hereinafter, 'Private Video Information')." (Dkt. 27 ¶ 3 (emphasis added); *see also id.* ¶¶ 32, 81, 82, 83, 114, 115, 116, 121, 128, 129, 131, 132.) But the term "video review course" is one Plaintiff makes up to describe Ascend's services; in fact, Ascend's services are subscriptions for testing services (as the original Complaint acknowledged). No matter. Whether one refers to Ascend's services as a subscription (as in the original Complaint) or a "video review course" (as in the Amended Complaint), the VPPA does not restrict the disclosure of a consumer's purchase of access to unspecified videos.

The VPPA restricts only the disclosure of "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). Put simply, the VPPA restricts only the disclosure of *specific video* information, and a subscription to access unspecified videos, even if Plaintiff wants to call that a "video review course," does not count as *specific video* information.

That puts an end to Plaintiff's Amended Complaint.

If that were not enough, though, the Amended Complaint fails for other reasons. The VPPA contains an exception that allows the disclosure of names and addresses—and even the subject matter of videos—if the defendant provides the consumer the ability to opt out and if the disclosure is for marketing purposes. 18 U.S.C. § 2710(b)(2)(D). Plaintiff alleges that the purpose of the alleged disclosure here is for marketing purposes, and there is no question that Ascend offers its customers the right to opt out.

And Ascend cannot even be considered a "video tape service provider" in the first place. Ascend provides content and services, including software tools and analytic solutions, primarily to institutions like nursing schools. Educators, administrators, and students use Ascend's services to support schools' program curriculum and students' mastery of content necessary for professional practice. Any use of videos on Ascend's websites is ancillary to that overall purpose and is dwarfed by the non-video content and services Ascend offers. Under any test the Court uses, therefore, Ascend is not even subject to the VPPA.

For any of these reasons, the Amended Complaint must be dismissed with prejudice.

## BACKGROUND

## I.    Ascend's ATI Website Helps Students Prepare for Nursing Exams.

Ascend is a leading provider of educational content and software tools in a variety of industries, including healthcare. (Dkt. 27 ¶ 18.) One of Ascend's healthcare businesses,

Assessment Technologies Institute, LLC, is a leading provider of educational resources and assessments, offering products and services to nursing programs to help nursing students with their curriculum, graduation, and preparation for the National Council Licensure Examination ("NCLEX").[1] (*See id.* ¶¶ 20-21.)

Primarily in connection with its provision of services to nursing schools, ATI offers on its website, www.atitesting.com, a full range of student-facing services designed to help students master the nursing curriculum, successfully graduate from nursing school, and succeed on the NCLEX. (*Id.* ¶ 22.) ATI's range of products includes books to review certain topics, online coaching for the NCLEX, and practice quizzes. (*See, e.g.*, Test your A&P knowledge, ATI, https://www.atitesting.com/anatomy-and-physiology (last visited Apr. 4, 2025) (Ex. B) ("A&P Online Practice Test" offers access to 70 multiple-choice questions and a score report).)

The subscriptions ATI offers to its website also span a wide range. ATI offers at least 40 different subscription options on its website.[2] While some of the subscriptions include access to videos, not all do. For example, "Pharmacology Made Easy 5.0" has 13 modules, including

---

[1] *See also* Why ATI, ATI, https://www.atitesting.com/about (last visited Apr. 4, 2025) (Ex. A). "Ex." refers to exhibits to the accompanying Declaration of Mark David McPherson. The Complaint cites the ATI website, along with other websites Ascend maintains (though Plaintiff does not allege she ever interacted with Ascend's other websites). (Dkt. 27 ¶ 2.) The Complaint rests entirely on what the ATI website offers, how Plaintiff interacted or interacts with it, and what information is disclosed through it. For that reason, as well as the fact that the contents of ATI's website are not subject to dispute, the Court may take judicial notice of ATI's website including the particular pages cited to it, as more fully detailed in the accompanying request for judicial notice. *Sarvis v. Polyvore, Inc.*, 2013 WL 4056208, at *4 n.3 (D. Mass. Aug. 9, 2013) ("This court takes judicial notice of the images on defendant's website as 'official public records; . . . documents central to the plaintiff's claim; or . . . documents sufficiently referred to in the complaint.' Alternately, this court takes judicial notice of the Polyvore.com screenshots as information publicly displayed on a party's own website."); *Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.*, 2022 WL 407409, at *4 (D. Mass. Feb. 10, 2022).

[2] Elevate your nursing journey with ATI, ATI, https://www.atitesting.com/solutions (last visited Apr. 4, 2025) (Ex. C).

video case studies of medications used in clinical settings, while "Learning Strategies: Your Guide to Classroom and Test-Taking Success" includes a research-based book only.[3]

Plaintiff alleges that the "two most expensive options" of review courses for the Test of Essential Academic Skills ("TEAS") exam include the "SmartPrep Tutorial," providing access to "key concept videos." (Dkt. 27 ¶¶ 51-52.) Yet Plaintiff does not identify even a single specific video included as part of the TEAS preparation courses, nor does she allege that she herself purchased one of these TEAS courses. There are up to 44 videos a consumer could access depending on which TEAS preparation package they purchase. *See* TEAS Prep Product Comparison, ATI, https://www.atitesting.com/teas/compare-prep (last visited May 7, 2025) (Ex. J). Beyond that, TEAS courses include much more than just video. *Id.* (offering practice tests, test simulations, study guides, and more).

## II.    Plaintiff Alleges Only Limited Interactions with ATI's Website.

Plaintiff Allison Hetrick alleges that in or around March 2024, she subscribed to ATI's website by registering and paying for a review course and providing her personal information. (Dkt. 27 ¶ 10.) Plaintiff does not identify the course she allegedly purchased. (*Id.*) She merely alleges that *after* she purchased a review course, she "accessed the ATI Testing Website and viewed prerecorded videos to which she gained access through her purchase of the video review course." (*Id.* ¶ 11.)

Plaintiff alleges that she "had a Meta account, a Meta profile, and [a Facebook ID] associated with such profile." (*Id.* ¶ 12.) She also alleges that she "had a Google account and a Gmail address (e.g., an account with Google's email service)," and that "[t]o create her Google

---

[3] Pharmacology Made Easy, ATI, https://www.atitesting.com/pharmacology/pharmacology-made-easy (last visited Apr. 4, 2025) (Ex. D); Learning Strategies: Your Guide To Classroom and Test-Taking Success, https://www.atitesting.com/pre-nursing-school/learning-strategies (last visited Apr. 4, 2025) (Ex. E).

account, Plaintiff provided Google with her name, birthday, and gender." (*Id.* ¶ 14.) Plaintiff does not allege that she used her Gmail address to sign up for an Ascend course. And she does not allege that she was logged in to her Facebook account when she signed up for an Ascend course.

## III.    Plaintiff's Challenge to the Meta Pixel and Google Analytics.

Much of Plaintiff's Amended Complaint is devoted to bemoaning the state of online privacy, without any specific application to Ascend or ATI's website. Of the Amended Complaint's 133 paragraphs, 15 are about the "data mining industry" (*id.* ¶¶ 33-47), plus an additional 15 paragraphs about the "Meta Pixel" in general (*id.* ¶¶ 86-101).

As Plaintiff describes it, the Meta Pixel is "unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta." (*Id.* ¶ 87.) According to her, "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'" (*Id.* ¶ 88.) The purpose, Plaintiff alleges, is to facilitate "highly targeted advertisements to the persons whose personal information" is gathered and allegedly disclosed to Meta. (*Id.* ¶ 100.)

Plaintiff alleges that Ascend uses the "Meta Pixel" on a handful of websites she alleges Ascend operates and maintains, including ATI's website. (Dkt. 27 ¶¶ 103, 107.)

Plaintiff also alleges that Ascend uses Google Analytics—"a suite of software products which permits owners and operators or internet properties to 'measure traffic and engagement across various platforms, like websites and apps.'" (*Id.* ¶ 59.) According to Plaintiff, "Google Tag" is "a snippet of programming code which enables Google Analytics users to track activities taken by users on websites where it is installed." (*Id.* ¶ 60.) Plaintiff alleges that Ascend uses the Google Tag "to disclose to Google information sufficient to individually identify the consumer

and information sufficient to identify the video or video review course purchased by the consumer." (*Id*. ¶ 68.)

For both the Meta Pixel and Google Tag, the Amended Complaint cannot commit to what precise information about Plaintiff is allegedly disclosed. When the Amended Complaint alleges that Ascend uses the Meta Pixel or Google Tag to disclose information about Plaintiff, the allegation is that the Pixel or Tag discloses *either* "information sufficient to identify the video *or* video review course purchased by the consumer." (Dkt. 27 ¶¶ 68, 103, 110 (emphasis added).) This either/or construction is embedded in Plaintiffs' definition of the phrase "Private Video Information." The Amended Complaint defines that to mean "information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites (hereinafter, 'Private Video Information')." (Dkt. 27 ¶ 3 (emphasis added).)

When the Amended Complaint alleges a disclosure of "Private Video Information," in other words, it is referring to information that could include *either* a specific video *or* a review course. (*See id*. ¶¶ 32, 81-83, 114,-116, 121, 128, 129, 131, 132.) The "or" in Plaintiff's phrase precludes Plaintiff from being able to allege that Ascend discloses to Meta or Google "information that reveals a particular, individually identifiable person purchased access to a specific video." (*Id*. ¶ 3.) The most Plaintiff can allege is that *either* Ascend discloses such information *or* it merely discloses the review course that a consumer purchases. (*Id*.)

On the basis of these vague allegations, Plaintiff seeks to represent a class of all persons who, during the two years before she filed the Amended Complaint, allegedly "purchased access to a video or video review course on any one of Defendant's Websites and had their personally identifiable information disclosed to a third party." (Dkt. 27 ¶ 118.) (Although Plaintiff thus

seeks to represent a class of subscribers to websites Ascend maintains other than ATI's, Plaintiff does not allege she interacted with any Ascend website except for ATI's website.)

## ARGUMENT

**I.    Without Even Putting Ascend on Notice of the Allegations Against It, the Amended Complaint Must Be Dismissed for Failure to Satisfy Rule 8.**

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to provide defendant "fair notice of what the plaintiff's claim is and the grounds upon which such claim rests." *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.)*, 263 F. Supp. 2d 140, 148 (D. Mass. 2003); *see* Fed. R. Civ. P. 8(a)(2), 8(d)(1) (allegations must be "simple, concise, and direct"); *M.K. v. Google LLC*, 2023 WL 2671381, at *2 (N.D. Cal. Mar. 27, 2023) (complaint must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation").

Plaintiff's Amended Complaint cannot satisfy even this most basic requirement of Rule 8. The Amended Complaint contains nothing indicating what Ascend allegedly does to violate the VPPA's provisions. At its core, the Amended Complaint alleges—at most—*either* that Ascend discloses to Meta and Google "information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites." (Dkt. 27 ¶ 3 (emphasis added).)

What, then, is Plaintiff's claim? That Ascend discloses to Meta and Google specific videos Plaintiff purchased? If that were the allegation, Ascend could demonstrate, as it has already demonstrated for Plaintiff, that its website surely does not do so. There is simply no basis for such an allegation. Or does Plaintiff mean to allege merely that Ascend discloses to Meta and Google the "video review course on Defendant's Websites"—a disclosure of no video information at all, notwithstanding Plaintiff's addition of the word "video" to Ascend's courses?

(Dkt. 27 ¶ 3.) The Amended Complaint cannot answer even this fundamental question, leaving Ascend and the Court to guess at what the Amended Complaint charges.

Instead of identifying the practice Plaintiff challenges, the Amended Complaint defines "information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites" as "Private Video Information" (Dkt. 27 ¶ 3 (emphasis added)), and then repeatedly alleges that a disclosure of such information violates the VPPA. (*See, e.g.*, *id*. ¶¶ 128, 129, 131, 132.) Elsewhere, the Amended Complaint merely uses "formulaic language that largely parrots the language of the VPPA," *Google LLC*, 2023 WL 2671381, at *3 (*see, e.g.*, Dkt. 27 ¶¶ 3, 80, 113), with the allegations so vague that counsel can file (and is filing) essentially the same complaint around the country. *See, e.g.*, Complaint, *Lovett v. Continued.Com, LLC*, No. 1:24-cv-00590 (S.D. Ohio Oct. 16, 2024).

This pleading technique does not satisfy Rule 8's requirement to provide Ascend with "fair notice of what the plaintiff's claim is and the grounds upon which such claim rests." *Superior Kitchen Designs*, 263 F. Supp. 2d at 148; *Hasan v. Educ. Comm'n for Foreign Med. Graduates*, 2024 WL 5008882, at *2 (D. Mass. Dec. 6, 2024) (dismissing complaint where bare and conclusory allegations did not comply with the pleading standards of Fed. R. Civ. P. 8(a) and noting a "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why").

Instead of identifying the basis for Plaintiff's claim against Ascend, the Amended Complaint attempts to paint a bleak picture of privacy in the digital era, but fails to tie Ascend to this supposedly "Orwellian" world. (*See, e.g*., Dkt. 27 ¶¶ 41 ("entire black market exists where the personal information of Americans is exchanged"); 100 ("Meta then monetizes this Orwellian database").) Plaintiff recites the requirements and history of the VPPA, and spends

nearly 40 paragraphs describing the Meta Pixel, Google Analytics, and "privacy concerns," but offers no specific allegations against Ascend. All Plaintiff offers about Ascend is that it discloses specific video information *or* that it does not disclose specific video information, just the type of "unadorned accusation" Rule 8 prohibits. (Dkt. 27 ¶ 3.) *Google LLC*, 2023 WL 2671381, at *2; *Cousart v. OpenAI LP*, 2024 WL 3282522, at *1 (N.D. Cal. 2024) (failure to comply with Rule 8 where "the complaint is not only excessive in length, but also contains swaths of unnecessary and distracting allegations making it nearly impossible to determine the adequacy of the plaintiffs' legal claims").

Ascend cannot defend against an allegation that covers the two ends of the spectrum: disclosure *or* non-disclosure. Even if one removed the "or" from Plaintiff's allegation, there is no information about how Ascend supposedly discloses information about specific videos to Meta, as required and as discussed in more detail below. Because the Amended Complaint fails to provide sufficient detail showing Plaintiff is entitled to relief and putting Ascend on notice of her claim, the Court should dismiss the Amended Complaint for failure to meet Rule 8's basic requirements.

## II.    The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) for Failure to State a Claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements" do not suffice. *Id*.

To plead a plausible claim for violation of the VPPA, Plaintiff must allege that (1) Ascend is a "video tape service provider," (2) Ascend knowingly disclosed "personally

identifiable information concerning any consumer of such provider," and (3) the disclosure was "not authorized by section 2710(b)(2)." 18 U.S.C. § 2710(b); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiff does not plausibly plead these elements.

###    A.    Plaintiff's Limited Allegation that Ascend Discloses Subscription Information Fails to Allege a Violation of the VPPA.

Even were the Court to find that Plaintiff's allegations satisfy Rule 8, Plaintiff cannot plausibly allege that Ascend disclosed to Meta or Google "personally identifiable information," as defined in the VPPA. The VPPA restricts disclosure of "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). The Amended Complaint does not provide any allegation, much less a plausible one, that Ascend discloses such information.

Instead, once again, Plaintiff alleges *either* that Ascend discloses to Meta and Google "information that reveals a particular, individually identifiable person purchased access to a specific video *or* video review course on Defendant's Websites." (Dkt. 27 ¶¶ 3, 68, 103, 110 (emphasis added).) The Amended Complaint's sleight of hand is designed to obscure that Plaintiff cannot allege that Ascend discloses to Meta "specific videos" that a consumer purchases. Instead, the Amended Complaint defines "Private Video Information" as including "information that reveals a particular, individually identifiable person purchased access to a … video review course on Defendant's Websites" (*id.* ¶ 3), and the Amended Complaint then repeatedly alleges that disclosure of such information violates the VPPA. (*See, e.g.*, *id.* ¶¶ 3, 68, 103, 110.) In other words, there is nothing in the Amended Complaint supporting an allegation that Ascend discloses to Meta or Google "specific videos"; the most Plaintiff alleges, as the Amended Complaint acknowledges with its persistent reliance on the Amended Complaint's invention of the term "Private Video Information," is that Ascend discloses "information that

reveals a particular, individually identifiable person purchased access to a … video review course on Defendant's Websites." (*Id.* ¶ 3.)

While the original Complaint referred to Ascend's subscriptions, the Amended Complaint's re-defining of Ascend's "subscription" as a "video review course" does not make it so, and nothing in the VPPA restricts disclosing to a third party a "subscription." The VPPA restricts the disclosure of "specific video materials or services requested or obtained." 18 U.S.C. § 2710(a)(3). A subscription to ATI's website is simply not a "specific video material or service." As noted, a subscription to ATI's website grants a consumer access to any number of services that have nothing to do with videos. (*See supra* n. 2.) Indeed, Plaintiff does not allege that the review course she purchased on the ATI website included even a single video. Although Plaintiff attempts to show that the TEAS courses include access to videos (Dkt. 27 ¶¶ 59-55), an allegation that itself does not satisfy the specific video requirement (*see infra* at 13), Plaintiff does not even allege that she purchased one of the TEAS courses she describes. It could be that her subscription entitled her to take a series of practice tests or view online books,[4] and nowhere does Plaintiff allege that her course necessarily involved the viewing of a prerecorded video.[5]

Plaintiff's allegation that Ascend disclosed "information that reveals a particular, individually identifiable person purchased access to a … video review course on Defendant's

---

[4] Review Module Package, ATI, https://www.atitesting.com/review-module-package (last visited Apr. 4, 2025) (Ex. F) ("Review Module Package" offers access to nine books); Test your A & P knowledge, ATI, https://www.atitesting.com/anatomy-and-physiology (last visited Apr. 4, 2025) (Ex. B) ("A&P Online Practice Test" offers access to 70 multiple-choice questions and a score report).

[5] Plaintiff alleges that she "viewed prerecorded videos to which she gained access through her purchase of the video review course," (Dkt. 27 ¶ 11), but she does not allege—and could not allege—that Ascend disclosed any such specific purchase or viewing. In other words, she alleges merely that Ascend disclosed the fact that she purchased a subscription (or a "review course," if Plaintiff insists), not that Ascend disclosed specific video information she later "requested or obtained" with that subscription. (*See id.* ¶¶ 68, 73, 84.)

Websites"—the only thing Plaintiff means with her repeated references to "Private Video Information" (Dkt. 27 ¶ 3)—is thus not enough to establish a violation of the VPPA. *See* 18 U.S.C. § 2710(a)(3) (requiring disclosure of "specific" videos "requested or obtained"); *United States v. Shultz*, 2018 WL 534333, at *3 (D. Kan. Jan. 24, 2018) (PII is "information that identifies a specific person *and* ties that person to *particular videos that the person watched*.") (emphasis added); *FTC v. Amazon.com, Inc.*, 2015 WL 11256312, at *3 (W.D. Wash. Aug. 3, 2015) (rejecting the argument that identifying customers denied a refund for in-app purchases violates the VPPA because no specific video information was requested).

Even if Plaintiff could allege that Ascend disclosed to Meta or Google that she purchased a review course that included prerecorded video content—and the Amended Complaint does not—such an allegation would still fall short of a VPPA violation. Ascend is unaware of any court ever holding that anything other than a disclosure of a specific video suffices for a VPPA violation. *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (holding plaintiff adequately alleged that Today.com disclosed PII within the meaning of the VPPA by disclosing "the viewed video's URL and name"); *Gonzalez v. Cent. Elec. Coop., Inc.*, 2009 WL 3415235, at *11 (D. Or. 2009) (finding that Doubletree did not violate the VPPA because the disclosure of plaintiff's purchase of one of 15 movies without specifying the movie does not constitute PII); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284-85 (S.D.N.Y. 2023) ("disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page.").

At bottom, the Video Privacy Protection Act only restricts the disclosure of *video* information to third parties. That requirement is in the title, purpose, and text of the statute. All

Plaintiff alleges, at most, is that Ascend discloses subscription information to Meta, and Plaintiff cannot manufacture a VPPA claim by defining "subscription" to mean "video." It simply is not, and Plaintiff has no factual, textual, or legal support for any argument to the contrary. For this reason alone, Plaintiff's VPPA claim fails at the start, even without considering whether the VPPA's exceptions permit Ascend's alleged disclosure (they do), or whether Ascend counts as a "video tape service provider" (it does not).

> **B.     Even If the VPPA's Definition of PII Somehow Reached Disclosure of a Subscription, the VPPA's Exception Permits Any Such Disclosure.**

The VPPA includes a number of exceptions, one of which Plaintiff might argue informs the meaning of "personally identifiable information." Section 2710(b)(2)(D) permits the disclosure of consumers' "names and addresses," as well as the "subject matter of any video tapes or other audio visual material" if "the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure," and in the case of disclosure of subject matter, "if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D). Contrary to Plaintiff's anticipated argument, this exception cannot be read to expand the VPPA's previous definition of "personally identifiable information." 18 U.S.C. § 2710(a)(3). As the Southern District of New York explained, the VPPA's definition of PII, notwithstanding its use of the word "including," must be read as limited to a disclosure of specific video materials. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015) ("To be PII, information must identify a specific person and must tie this person to specific video materials; it can do no less, but the scope of what constitutes PII is not otherwise limited.").

But even if the Court accepted such an argument, the exception would protect Ascend from Plaintiff's allegations here. Here, Plaintiff alleges at most that Ascend disclosed to Meta

14

Plaintiff's name and Facebook ID (a number allegedly identifying a person's Facebook profile), and to Google Plaintiff's name, email address, and phone number, combined with the fact that she purchased a subscription. Section 2710(b)(2)(D) permits Ascend to share that information with Meta and Google. Such a disclosure is permissible as long as "the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i). Ascend does so. *See* Your Privacy Choices, ATI, https://www.atitesting.com/ (last visited Apr. 4, 2025) (Ex. G) (instructing, "[t]oggle this button to the left to opt out" of specified information collection and sharing); Ascend Global Privacy Policy, ATI, https://auth.atitesting.com/policy.html?_gl=1*1af0b8d*_gcl_au*OTYxNDI3MjY3LjE3NDE4NzYwNTI) (last visited Apr. 4, 2025) (providing opt-out instructions) (Ex. H).

   And disclosing to Meta and Google the subject matter of a subscription would be permissible, even if the Court were to accept Plaintiff's characterization of an ATI subscription—as a subscription to a package of videos. As we detail below, that is simply not what a subscription to ATI is, given the vast amount of non-video-related content, tools, and materials available to users of ATI products and services. *See infra*, at 17-18. But even if the Court were to accept that an ATI subscription is a subscription to a package of videos, the VPPA provides that "the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(ii). That is precisely the purpose for which the original Complaint alleged Ascend shares subscription information. (*See, e.g.*, Dkt. 27 ¶ 100 (alleging purpose of Meta Pixel is to facilitate "highly targeted advertisements to the persons whose personal information" is gathered and allegedly disclosed to Meta); Dkt. 1 ¶ 47 (Meta Pixel "allows companies like

Defendant to build detailed profiles about their customers and to serve them with highly targeted advertising.").)[6]

C.    **Plaintiff's Theory Should Be Rejected as an Unwarranted Expansion of the Term "Video Tape Service Provider."**

Plaintiff's theory of VPPA liability should be rejected for the additional reason that it is an unwarranted expansion of the definition of "video tape service provider." The VPPA only restricts "video tape service providers" from making certain disclosures. *See* 18 U.S.C. § 2710(b)(1). The VPPA defines "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

To determine whether a defendant is a "video tape service provider," courts use different tests. The "centrality" test looks to whether "the defendant's product must not only be substantially involved in the conveyance of video content to consumer[s] but also significantly tailored to serve that purpose." *Rancourt v. Meredith*, 2024 WL 381344, at *14 (D. Mass. Feb. 1, 2024). This Court recently declined to adopt the "centrality" test, and instead focused on the plain language of whether the defendant was "engaged in the business of . . . rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.*

Yet the defendant in *Rancourt*, and in every other case within this circuit to find a defendant met the definition of video service provider, was significantly more involved in the business of video delivery than is Ascend. In those cases, the defendants' websites featured videos prominently. *See, e.g.*, *id.* at *1 ("The App contains cooking recipes, many of which

---

[6] Allegations from Plaintiff's original Complaint remain admissions. *Glob. ePoint, Inc. v. GTECH Corp.*, 58 F. Supp. 3d 178, 190 (D.R.I. 2014) (allegation in original complaint "remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.").

'include a text recipe accompanied by a video showing the recipe's preparation.'"); *Saunders v. Hearst TV, Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) ("Hearst hosts and delivers thousands of videos to one of every five homes in the United States.") (internal quotations omitted); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 34 (D. Mass. 2023) ("Defendants operate a website . . . which offers a variety of video content related to cooking."). ATI's website, by contrast, features subscriptions that provide much more than just videos—for example, multiple choice practice tests with detailed rationales, flash cards, and specialized review books, to name a few— and many of the available materials include no video content at all. *See* Elevate your nursing journey with ATI, ATI, https://www.atitesting.com/solutions (last visited Apr. 4, 2025) (Ex. C).

Whatever test the Court applies, therefore, Ascend is not a "video tape service provider," because Ascend's video offerings are at best ancillary to its main product offerings. ATI and its website provide products and services used by nursing programs to assist nursing students in their studies and in exam preparation. (Dkt. 27 ¶¶ 20-21.) As discussed above, Plaintiff does not allege that ATI's offerings necessarily involve prerecorded videos, she does not allege that her subscription or plan required her to watch a prerecorded video, nor does she provide any hint of the prevalence of prerecorded videos on ATI's website (or on the other Ascend websites she lists). Indeed, just looking at ATI's website offerings, Plaintiff could not allege that ATI is "engaged in the business" of providing videos, much less that video content is "central" to its services. For instance, the package for "Dosage Calculation and Safe Medication Administration 4.0" includes "in-depth tutorials, engaging learning activities, assessment and case studies," with no mention of these features' forms.[7]

---

[7] Dosage Calculation & Safe Medication Administration, ATI, https://www.atitesting.com/pharmacology/dosage-calculation-safe-medication-administration (last visited Apr. 4, 2025) (Ex. I).

Whatever test governs whether Ascend is a "video tape service provider," then, Ascend simply does not meet that definition. 18 U.S.C. § 2710(a)(4). For that reason, too, Plaintiff's VPPA claim must be dismissed.

## CONCLUSION

For all of these reasons, Defendant respectfully requests that the Court grant its motion and dismiss the Amended Complaint in its entirety and with prejudice.

Dated: May 12, 2025

_/s/ Jennifer L. Chunias_

Jennifer L. Chunias
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
T: 617.570.1000
F: 617.523.1231
JChunias@goodwinlaw.com

Mark David McPherson (_pro hac vice_)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018
T: 212.813.8869
F: 212.202.4582
MMcPherson@goodwinlaw.com

Counsel for Defendant
Ascend Learning, LLC

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)**

I, Jennifer L. Chunias, counsel for Defendant in the above-captioned action, hereby certify that counsel for Defendant conferred with counsel for Plaintiff before filing this motion, but counsel for the parties were unable to reach agreement on this motion.

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias

**CERTIFICATE OF SERVICE**

I, Jennifer L. Chunias, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 12, 2025.

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias

21