**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALLISON HETRICK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:25-cv-10103-NMG |
| v. | |
| ASCEND LEARNING, LLC, | |
| Defendant. | |

## PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

    A.   The Video Privacy Protection Act ........................................................................................ 2

    B.   Factual Background ............................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

    A.   The FAC Satisfies Rule 8 ..................................................................................................... 6

    B.   The FAC Adequately Alleges a VPPA Violation ............................................................... 10

        i.    The FAC Adequately Alleges Defendant's Disclosure of PII ........................................ 11

        ii.   The FAC Adequately Alleges Defendant's Disclosures do not Fall within a Statutory Exception ......................................................................................................................... 15

        iii.  The FAC Adequately Alleges that Defendant is a Videotape Service Provider ............... 18

CONCLUSION ............................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ambrose v. Bos. Globe Media Partners LLC*,
   No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022). --------------------------- 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007). ------------------------------------------------------------------------------------5

*Brookins v. Ne. Univ.*,
   731 F. Supp. 3d 112 (D. Mass. 2024). ------------------------------------------------------------------5

*Cardigan Mountain Sch. v. New Hampshire Ins. Co.*,
   787 F.3d 82 (1st Cir. 2015). ------------------------------------------------------------------------------6

*Carter v. Newland*,
   441 F. Supp. 2d 208 (D. Mass. 2006). ----------------------------------------------------------------7, 9

*Channing Bete Co., Inc. v. Greenberg*,
   No. 3:19-CV-30032-MGM, 2022 WL 43692 (D. Mass. Jan. 5, 2022). ----------------------------- 18

*Collins v. Pearson Educ., Inc.*,
   721 F. Supp. 3d 274 (S.D.N.Y. 2024). ------------------------------------------------------ 7, 8, 10, 15

*Connectu LLC v. Zuckerberg*,
   522 F.3d 82 (1st Cir. 2008). ----------------------------------------------------------------------------- 17

*Cousart v. OpenAI LP*,
   No. 23-CV-04557-VC, 2024 WL 3282522 (N.D. Cal. May 24, 2024). ------------------------------ 10

*Daniel v. Cantrell*,
   375 F.3d 377 (6th Cir. 2004). --------------------------------------------------------------------------- 17

*Davison v. Loudoun Cnty. Bd. of Supervisors*,
   No. 1:16CV932 (JCC/IDD), 2016 WL 4801617 (E.D. Va. Sept. 14, 2016). --------------------- 18

*Dudley v. Chano*,
   No. CV 24-13038-NMG, 2025 WL 1372342 (D. Mass. May 12, 2025). -----------------------------6

*Frawley v. Nexstar Media Grp. Inc.*,
   No. 3:23-CV-2197-L, 2024 WL 3798073 (N.D. Tex. July 22, 2024). ------------------------------ 13

*Ghanaat v. Numerade Labs, Inc.*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023). ----------------------------------------------------------------- 13

*Golden v. NBCUniversal Media, LLC*,

688 F. Supp. 3d 150 (S.D.N.Y. 2023). ------------------------------------------------- 15

*Guereca v. Motorsport.tv Digital, LLC*,
No. 1:24-CV-24066, ECF No. 30 (S.D. Fla. Feb. 19, 2025). ------------------------------------- 7

*Hasan v. Educ. Comm'n for Foreign Med. Graduates*,
No. 24-CV-10438-DJC, 2024 WL 5008882 (D. Mass. Dec. 6, 2024). ------------------------------ 10

*In re Colonial Mortg. Bankers Corp.*,
324 F.3d 12 (1st Cir. 2003). ---------------------------------------------------------------- 5

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014). -------------------------------- 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017). ----------------------------------------------------- 19, 20

*Kueppers v. Zumba Fitness LLC*,
No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025). ------------------------------- 11, 12, 14

*Lamb v. Forbes Media LLC*,
No. 22-CV-06319-ALC, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023). -------------------------- 15

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D Ga. 2022). ------------------------------------------------------- 19

*Lee v. Springer Nature Am., Inc.*,
No. 24-CV-4493 (LJL), 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025). ------------------------------ 19

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009). ---------------------------------------------------------------- 6

*Manza v. Pesi, Inc.*,
No. 24-CV-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025). ------------------- 7, 8, 10, 12

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023). ------------------------------------------------- 7, 8, 10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023). ------------------------------------------------------ 14, 15

*Mata v. Zillow Grp., Inc.*,
No. 24-CV-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024). ------------------- 20

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015). ------------------------------------------------------------- 11

*MouseBelt Labs Pte. Ltd. v. Armstrong*,

674 F.Supp.3d 728 (N.D. Cal. 2023). ------------------------------------------------------------ 18

*Haines v. Cengage Learning, Inc.,*
  No. 1:24-cv-710, ECF No. 18 (May 5, 2025 S.D. Ohio).----------------------------------------- 12

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024).------------------------------ 13

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011). ------------------------------------------------------------------------5

*Rancourt v. Meredith Corp.*,
  No. 22-CV-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024). ------------------------------ 20

*Saunders v. Hearst Television, Inc.*,
  711 F. Supp. 3d 24 (D. Mass. 2024). ------------------------------------------------------------ 17

*Sellers v. Bleacher Rep., Inc.*,
  No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023). --------------------------14, 15

*Stark v. Patreon, Inc.* ["*Stark I*"],
  635 F.Supp.3d 841 (N.D. Cal. 2022). ------------------------------------------------------------ 20

*Sterling v. Feek*,
  No. 3:22-CV-05250, 2022 WL 16699191 (W.D. Wash. Nov. 3, 2022). ---------------------------- 18

*United States v. Bello*,
  194 F.3d 18 (1st Cir. 1999). ----------------------------------------------------------------------5

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993). ------------------------------------------------------------------- 5, 18

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016). ------------------------------------------------------------------11, 14

## STATUTES

18 U.S.C. § 2710. --------------------------------------------------------------------------------passim

## RULES

Fed. R. Evid. 201(b). ----------------------------------------------------------------------------------5

Plaintiff Allison Hetrick, individually and on behalf of all others similarly situated, respectfully submits this response to the motion to dismiss filed by Defendant Ascend Learning, LLC ("Motion" or "Mot"). *See* ECF No. 29.

## **INTRODUCTION**

Plaintiff brings a single claim against Defendant Ascend Learning, LLC ("Defendant" or "Ascend") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *See* ECF No. 27. Her claim, individually and on behalf of all others similarly situated, arises from Defendant's knowing and intentional installation of tracking technology created by Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), and Alphabet, Inc. f/k/a Google ("Google") on Defendant's family of websites. *See id.* at ¶¶ 2, 19. When Plaintiff and other consumers requested or obtained prerecorded videos on Defendant's websites, Defendant sent their personally identifiable information to Meta and Google in violation of the VPPA. *Id.*

Defendant has now moved to dismiss the complaint on two grounds. First, Defendant argues that Plaintiff's allegations in the First Amended Complaint ("FAC") fail to provide fair notice of the claims against it under Federal Rule of Civil Procedure 8. ECF No. 29 at 8-10. Second, Defendant argues that Plaintiff's VPPA claim fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) because: (i) a subscription or package of videos do not constitute "specific video materials or services" as the phrase is used in the VPPA; (ii) the exclusive use of marketing exception immunizes Defendant from liability; and (iii) Defendant is not a videotape service provider.

Defendant's arguments for dismissal are without merit. Defendant's first argument fails because the FAC offers Defendant more than fair notice of the claim against it. No court has relied upon Rule 8 in dismissing a VPPA claim, and the particularized allegations in the FAC plainly show that this Court should not be the first. Defendant's second argument fails because Plaintiff has

1

plausibly alleged each element of a VPPA claim, and the statutory exception invoked by Defendant does not apply.  The Motion should be swiftly denied.

## BACKGROUND

### A.  The Video Privacy Protection Act

The United States Congress passed the VPPA in 1988.  President Ronald Reagan signed the legislation into law that same year.  It protects the privacy interests of consumers who request or obtain video materials from commercial providers of such services.

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  It defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  It defines a "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ."  18 U.S.C. § 2710(a)(4).

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]."  18 U.S.C. § 2710(b).  Several exceptions to violations of the law are also enumerated.  *See* 18 U.S.C. § 2710(b)(2)(A)–(F).

### B.  Factual Background

Plaintiff's FAC alleges that Defendant is a "video tape service provider."  ECF No. 27, ¶ 126.  It details how Defendant operates the website www.atitesting.com (the "ATI Testing Website") where it "sells various video review courses geared towards prospective or current nursing students."  *Id*. at ¶¶ 10, 49.  As alleged, the ATI Testing Website provides "review courses for the Test of Essential Academic Skills ("TEAS") exam."  *Id*. at ¶ 22.  Among the four different TEAS review

courses offered for sale on the ATI Testing Website, two of them—the "Comprehensive Package" and the "SmartPrep Package"—are video review courses. *See id*. at ¶¶ 10, 49-57.

The two video review courses sold on the ATI Testing Website contain prerecorded videos addressing topics tested in the TEAS exam. *See id*. at ¶¶ 10, 50-57. As explained in an advertisement published by Defendant, each "provides you with in-depth content, media-rich visuals, and key concept videos." *Id*. at ¶ 52 (also stating that each course "lets you access images and key concept videos by lesson."). The FAC provides two screenshots depicting the "key concept videos" accessible through these video review courses. *Id*. at ¶¶ 52, 54. It also alleges that Plaintiff "purchased access to a video review course on Defendant's ATI Testing Website on or about March 2024" and that she has "accessed the ATI Testing Website and viewed prerecorded videos to which she gained access through her purchase of the video review course. *Id*. at ¶¶ 10-11.

Beyond the ATI Testing Website, the FAC alleges that Defendant "operates and maintains a family of Websites where it sells access to prerecorded video content, including video review courses covering a wide range of subjects." *Id*. at ¶ 52. Generally, these "Websites are geared towards providing training and review materials to assist individuals in passing various professional licensing exams or maintaining their professional certifications." *Id*. All of these websites "sell access to prerecorded video materials in the form of standalone video courses, modules, and video course packages." *Id*. at ¶ 50 (providing citations to internet sources specifically disclosing the availability of videos for sale on those websites). The FAC alleges that each website has "the same tracking technologies installed" and those technologies are "configured in the same or a similar manner" as on the ATI Testing Website to "disclose the same information about its consumers to Meta and Google." *Id*. at ¶¶ 57, 80, 109.

The FAC further alleges that Defendant disclosed Plaintiff's "personally identifiable information" to third parties without her consent. *Id*. at ¶ 128. It alleges that Plaintiff has a Meta

account and explains how each person with a Meta account is assigned a unique, numerical Facebook ID, which personally identifies that individual. *Id*. at ¶¶ 3, 4, 88. It provides an overview of the Meta Pixel tracking technology, *id*. at ¶¶ 86-101, and alleges that Defendant has installed the Meta Pixel on the ATI Testing Website. *See, e.g.*, *id*. at ¶¶ 86. When a person with a Facebook account purchases a video review course on Defendant's ATI Testing Website, the FAC shows how Defendant sends the following information to Meta: (i) the consumer's Facebook ID; (ii) the title of the video review course purchased by the consumer; (iii) the URL of the webpage where the consumer made the purchase; (iv) certain custom-configured "event data" showing that the consumer added the video review course to their cart and purchased that course. *See id*. at ¶¶ 95, 97, 103-108.

The FAC also alleges that Defendant disclosed Plaintiff's "personally identifiable information" to Google. As with the Meta Pixel, the FAC provides an overview of the Google Analytics and Google Tag tracking technology. *See id*. at ¶¶ 59-66. It then shows, with numerous screenshots, how Defendant discloses to Google the fact that a person has purchased a specific video review course on the ATI Testing Website through that technology. *See id*. at ¶¶ 67-84. The information Defendant transmits to Google specifically includes: (i) the title of the video review course purchased; (ii) the "purchase" "event code"; (iii) the email address of the consumer; and (iv) the phone number of the consumer. *See id*. at ¶ 75 (listing these items, as sent to Google in an example transmission), ¶ 73 (depicting a screenshot of a POST request transmission from the ATI Testing Website to Google including these categories of information).

The FAC states that Defendant knowingly installed the Meta Pixel and Google Tag code on each of its websites. *See, e.g.*, *id*. at ¶¶ 81, 82, 84, 85, 110. It further alleges that none of the VPPA's exceptions apply to Defendant's conduct. *See id*. at ¶ 27. Plaintiff brings her claim on behalf of a class of similarly situated individuals whose personally identifiable information Defendant disclosed to third parties. *See id*. at ¶¶ 118-133.

4

## LEGAL STANDARD

**Rule 12(b)(6)**: In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Generally, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). However, a "a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint." *Brookins v. Ne. Univ.*, 731 F. Supp. 3d 112, 116 (D. Mass. 2024). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

**Judicial Notice**: In evaluating a motion to dismiss, courts are "required to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice." *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). Rule 201 provides that in order for a fact to be eligible for judicial notice, it "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Certain categories of information are sufficiently "susceptible to judicial notice" such as geography and maps. *United States v. Bello*, 194 F.3d 18, 24 (1st Cir. 1999).

## ARGUMENT

### A. The FAC Satisfies Rule 8

The FAC satisfies Rule 8 by providing Defendant with fair notice of Plaintiff's VPPA claim. As explained in the FAC, Plaintiff's claim is centered on Defendant's disclosure of her "personally identifiable information" to Meta and Google. *See, e.g.*, ECF No. 27 at ¶ 17. It alleges that this happened in March 2024, when she purchased a video review course on the ATI Testing Website. *See id*. at ¶ 10. When she did so, Defendant sent to Meta: (i) the title of the specific video review course she purchased on the ATI Testing Website; (ii) the URL where she purchased that video review course; (iii) her Facebook ID; and (iv) "event data" showing she added the video to her cart and made the purchase. *See* ECF No. 27 at ¶¶ 10, 13, 71-75. At the same time, Defendant sent to Google: (i) the title of the video review course Plaintiff purchased; (ii) the "purchase" "event code"; (iii) her email address; and (iv) her phone number. *See id*. at ¶¶ 73-75. The FAC further explains that Defendant's other websites operate in the same or a materially similar manner. *See* ECF No. 27 at ¶¶ 48, 57, 80, 85, 109. Those allegations provide Defendant more than fair notice of the claim and the ground upon which it rests.

To satisfy Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Dudley v. Chano*, No. CV 24-13038-NMG, 2025 WL 1372342, at *2 (D. Mass. May 12, 2025). A pleader is entitled to relief if his or her claim is plausible, which means "the factual allegations need only be enough to nudge the claim 'across the line from conceivable to plausible,' thus 'rais[ing] a reasonable expectation that discovery will reveal evidence of'" the claim asserted. *Cardigan Mountain Sch. v. New Hampshire Ins. Co.*, 787 F.3d 82, 88 (1st Cir. 2015). "The plaintiff[ ] ha[s] the right to plead alternative theories of liability, *see* Fed. R. Civ. P. 8(d), and [her] exercise of that right [does] not debar [her] from an independent review of each set of claims." *Limone v. United States,* 579 F.3d 79, 93 (1st Cir. 2009). The critical requirement of

Rule 8 is that the plaintiff's complaint give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Carter v. Newland*, 441 F. Supp. 2d 208, 212 (D. Mass. 2006) (citation omitted).

Within the VPPA context, courts routinely reject Rule 8 arguments as impermissible attempts to heighten a plaintiff's burden at the motion to dismiss stage. *See Markels v. AARP*, 689 F. Supp. 3d 722, 731 (N.D. Cal. 2023) (rejecting Rule 8 argument as a throw-away argument because "[t]hat is not this case by a long shot."); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 285 (S.D.N.Y. 2024) (rejecting Rule 8 argument and finding that "[t]he Complaint puts Pearson on notice of the factual basis for the claim of wrongdoing—that by virtue of Pearson's installation of the Pixel on its website, when Facebook user and Pearson subscriber Collins watched videos on Pearson's websites, reports of this activity were transmitted to Facebook."); *Manza v. Pesi, Inc.*, No. 24-CV-690-JDP, 2025 WL 1445762, at *10 (W.D. Wis. May 20, 2025) (rejecting Rule 8 argument "that a complaint must allege every fact that the plaintiff must ultimately prove."); *see also Guereca v. Motorsport.tv Digital, LLC*, No. 1:24-CV-24066, ECF No. 30 (S.D. Fla. Feb. 19, 2025)[1] ("There is no heightened pleading requirement for VPPA claims, nor are Plaintiff's allegations conclusory."). Plaintiff's allegations here mirror—or are even more specific than—the allegations from *Markel*, *Collins*, and *Manza*.

The FAC alleges Plaintiff suffered a deprivation of her statutory rights under the VPPA due to Defendant's disclosure of her "personally identifiable information" (including the name of the video review course that she purchased on the ATI Testing Website, the URL of the webpage where she made that purchase, and her personal identifiers) in March 2024 to Meta and Google. *See* ECF No. 27 at ¶¶ 10 ("She purchased access to a video review course on Defendant's ATI Testing Website on or about March 2024."), 13 ("When Plaintiff requested or obtained the video review

---

[1] *Guereca* is attached as **Exhibit A**, as the decision is not available on Westlaw or LexisNexis.

course containing prerecorded videos from Defendant's Website, Defendant disclosed to Meta Plaintiff's [Facebook ID] coupled with the specific title of the video review course she requested or obtained (as well as the URL where such a course is available for purchase), among other information about Plaintiff and the device she used to request or obtain such video materials or services"), 15 ("When Plaintiff requested or obtained the video review course containing prerecorded videos from Defendant's Website, Defendant disclosed to Google Plaintiff's phone number and email address coupled with the specific title of the video review course she requested or obtained (as well as the URL where such a course is available for purchase), among other information about Plaintiff and the device she used to request or obtain such video materials or services").  Those allegations alone are more than sufficient to put Defendant on notice of Plaintiff's claim against it.  *See, e.g.*, *Markels*, 689 F. Supp. 3d at 731; *Collins*, 721 F. Supp. at 285; *Manza*, 2025 WL 1445762 at *10.  But the FAC does not stop there.

The FAC also includes allegations regarding how the Meta Pixel and Google Tag operate on the ATI Testing Website specifically.  *See id.* at ¶¶ 67-84 (describing the configuration of the Google Tag on the ATI Testing Website); 102-107 (same for the Meta Pixel).  For example, it explains that Defendant has enabled a Meta Pixel "event" called "Add to Cart" on the ATI Testing Website, which informs Meta when a user adds a video review course to their online "shopping cart" (including the name of that video review course).  *Id.* at ¶¶ 105-106.  It further details how the "Subscribed Button Click" "event" trigger and its "event data" goes to Meta when a customer clicks the "Complete Purchase" button.  *Id.* at ¶¶ 107.  This information is sent along with the consumer's Facebook ID and the URL where they made the purchase whenever someone with a Facebook account buys a video review course on the ATI Testing Website.  *See id*. at ¶¶ 96, 97, 103-108.

The allegations regarding Defendant's use of the Google Tag on the ATI Testing Website are equally specific.  *See id.* at ¶¶ 67-84.  Defendant transmits at least four discrete pieces of information

to Google each time a consumer purchases a video review course: (i) the title of the video review course; (ii) the "purchase" "event code"; (iii) the consumer's email address; and (iv) the consumer's phone number. *See id*. at ¶¶ 73-75. The FAC even includes a screenshot showing internet traffic to Google containing each of these pieces of information in a single transmission. *See id*. at ¶ 73. Defendant sends this information to Google when a person clicks "Complete Order." *Id*.

These cumulative allegations surely provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Carter*, 441 F. Supp. 2d at 212. In view of them, Defendant's Rule 8 argument is a mere semantic quibble. Defendant takes issue with the FAC's definition of "Private Video Information" as "information that reveals a particular, individually identifiable person purchased access to a specific video or video review course on Defendant's Websites." *See* ECF No. 29 at 9. Defendant contends that the word "or" in this definition deprives it of fair notice of the claim asserted. *See id*. That is beyond a stretch, given the allegations stated throughout the FAC (and summarized above).

In any case, the "or" in the "Private Video Information" definition accounts for the fact the Plaintiff brings her claim on behalf of a class of similarly situated individuals who had their "personally identifiable information" disclosed by Defendant across its "family of websites." *See id*. at ECF No. 27 at ¶ 2. The FAC connects Plaintiff's specific injury to the other, specifically identified websites owned by Defendant. *See id.* at ¶¶ 2 (identifying the various other websites), 20 (identifying the subsidiary brands which own each of the other websites), 48 (providing citations to online sources indicating that each of the websites sells access to prerecorded videos). As alleged, Defendant has installed the Meta Pixel and Google Tag on each of these websites, programmed them to operate in a similar manner, and caused an identical injury to each putative class member. *See, e.g.*, *id.* at ¶¶ 2, 68, 80, 82, 85, 109, 110. Some of Defendants' websites sell access to packages of videos (grouped by specific subject matter), while others sell access to video in slightly different formats, such as

9

standalone videos. *See id.* at 48 ("Defendant's Websites sell access to prerecorded video materials in the form of standalone video courses, modules, and video course packages").[2] The "or" in the FAC's definition of "Private Video Information" accounts for this small difference between the websites. This does the opposite of depriving Defendant of fair notice—it carefully apprises Defendant of the nature of the claims against it.

Defendant's citations on this point completely miss their mark. First, Defendant relies on *Hasan v. Educ. Comm'n for Foreign Med. Graduates*, No. 24-CV-10438-DJC, 2024 WL 5008882, at *2 (D. Mass. Dec. 6, 2024), a case involving a pro se plaintiff's shotgun pleading that failed to identify the specific actions taken by each individual defendant. Second, Defendant relies on *Cousart v. OpenAI LP*, No. 23-CV-04557-VC, 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024), wherein the complaint failed to connect general policy concerns to the named plaintiffs' experiences. Defendant cites no VPPA cases—despite numerous decisions addressing Rule 8 arguments in contexts closely analogous to this one. *See, e.g.*, *Markels*, 689 F. Supp. 3d at 731; *Collins*, 721 F. Supp. at 285; *Manza*, 2025 WL 1445762 at *10.

Plaintiff alleges that she visited a specific website during a narrow timeframe wherein Defendant disclosed specific "personally identifiable information" about her to specific third parties. That is more than enough to provide fair notice of her claim. The Motion should be denied.

### B. The FAC Adequately Alleges a VPPA Violation

A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs have clearly and sufficiently alleged each element. Defendant only

---

[2] This difference is legally immaterial, as addressed below. *See infra* at 11.

challenges three of the elements; those elements are discussed below in the order they are addressed in the Motion.  None of Defendant's arguments is persuasive.  The Motion should be denied.

### i.  The FAC Adequately Alleges Defendant's Disclosure of PII

The VPPA's definition of "personally identifiable information" ("PII") includes "information which identifies a person as having requested or obtained specific video materials or services from a videotape service provider."  18 U.S.C. § 2710(a)(3).  The First Circuit broadly interprets this to mean "information reasonably and foreseeably likely to reveal which [] videos [a consumer] has obtained."  *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016).

The statutory term "specific video materials or services" includes video review courses. Defendant argues that "Plaintiff cannot allege that Ascend discloses to Meta 'specific videos' that a consumer purchases."  ECF No. 29 at 11.  But the Complaint does exactly that.  It alleges that Defendant disclosed to Meta (and Google) that Plaintiff requested or obtained the videos included in the video review course she purchased.  *See, e.g.*, ECF No. 27 at ¶¶ 13, 15.

Defendant asserts that it is "unaware" of "any court ever holding that anything other than a disclosure of specific videos suffices."  ECF No. 29 at 13.  It argues that the title of a specific, standalone video must be included in the transmission in order for any disclosure of "personally identifiable information" to be actionable.  *Id*. at 11-13; 18 U.S.C. § 2710(a)(3).  Defendant's baseline contention is that the video review courses sold on the ATI Testing Website are not "specific video materials or services" within the meaning of the VPPA because they contain more than one video.

Courts across the country disagree.  This precise question was recently addressed in *Kueppers v. Zumba Fitness LLC*, No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025).  The court considered whether a "Zumba Instructor Training Course" constituted "specific video materials or services" within the meaning of the VPPA.  *See id*. at 5.  The defendant allegedly disclosed the name of the course, but not the individual videos contained therein.  *Id*.  Without much difficulty, the court

held that disclosing the name of the course alone was actionable under the VPPA.  It recited a litany of "directly on point" cases holding that "a plaintiff bringing a VPPA claim need not allege that the specific video titles were disclosed."  *See id*. at 5-6 (collecting authorities).  The court wrote that "the Court joins these district courts in finding that a plaintiff bringing a VPPA claim ***need not allege that the specific video titles were disclosed*** . . . ."  *Id*. at 6 (emphasis added).  In reaching this holding, the court dispelled Defendant's argument raised here:

> Defendant's contention that the allegation that Defendant disclosed the "training course" purchased (containing multiple "modules"), rather than the specific videos within the course, is of no moment for the purpose of the VPPA.  Defendant doesn't argue that this training course doesn't contain any videos, only that it does not exclusively contain videos.

*Id.* at 7.  *Kueppers* is directly on point with respect to Defendant's argument.[3]  The same reasoning and supporting case law applies to the allegations here, which are substantially similar.  The same result should hold—Defendant's Motion should be denied.[4]

Many other cases are in accord.  In *Manza*, the Western District of Wisconsin recently denied a motion to dismiss where the allegations concerned the "sale of prerecorded ***video courses*** and seminars on various healthcare topics."  2025 WL 1445762 at *1 (emphasis added).  In *Aldana v. GameStop, Inc.*, the Southern District of New York found the alleged disclosure of video game titles sufficient to state a claim because of the "cut scenes" in the games.  No. 22-CV-7063-LTS, 2024 WL

---

[3] *Kueppers* is attached as **Exhibit B**, as the decision is not available on Westlaw or LexisNexis.

[4] Defendant's *ad hominem* attack on Plaintiff's counsel undermines its own credibility.  In the Motion, Defendant claims that the FAC's allegations are "so vague that counsel can file (and is filing) essentially the same complaint around the country."  ECF No. 29 at 9 (citing to another case filed by Plaintiff's counsel).  Had Defendant thoroughly surveyed Plaintiff's counsel's cases, it would have been aware of not only *Kueppers*, but also *Haines v. Cengage Learning, Inc.*, where a Magistrate Judge concluded that alleged disclosure of the title of a video review course (which contained multiple videos) stated a claim.  No. 1:24-cv-710, ECF No. 18, 12-16 (May 5, 2025 S.D. Ohio) (report and recommendation pending) (providing a thorough analysis of this issue and stating "defendant's emphasis on the lack of a specific video title in the complaint does not appear warranted by the text of the statute.").  *Haines* is attached as **Exhibit C**, as the decision is not available on Westlaw or LexisNexis.

708589, at *6 (S.D.N.Y. Feb. 21, 2024). In so finding, that court addressed the same argument Defendant raises here:

> GameStop argues that, to the extent that the VPPA covers cut scenes in a video game, Plaintiffs fail to allege that GameStop disclosed "the video material's identity" because "[d]isclosing the video game title is not the same as sharing what video clips a person requested, watched, or purchased: video games do not necessarily contain cut scenes and many video games in fact do not contain any cut scenes." (Def. Mem. at 16.) But GameStop also concedes that video game purchasers "simply receive whatever cut scenes the game developer happened to include in the video game." (*Id.*) In other words, there is no question that disclosing the name of the video game purchased also discloses the cut scenes that are included in that particular video game. The fact that a player may choose to "skip" or not watch a given cut scene (id. at 17) does not alter this reality.

No. 22-CV-7063-LTS, 2024 WL 708589, at *7 n.4 (S.D.N.Y. Feb. 21, 2024) (denying defendant's motion to dismiss). Courts have also repeatedly held that the specific names of the videos requested or obtained need not be alleged. *See, e.g., Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *3 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) ("Plaintiff is not required to allege the specific videos he watched to state a claim under the VPPA."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 n.8, 721 (N.D. Cal. 2023) ("Defendant also appears to argue that plaintiffs need to allege the specific video content they requested or obtained from defendant. . . . The Court finds this argument, which defendant does not support with authority or significant analysis, unpersuasive.") ("Whether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss.").

These decisions make sense. The purpose of the VPPA is to protect the "intellectual freedom" associated with a right to privacy in "an individual's choice of [] films." S. Rep. 599 at 4 (1988); *see also id.* at 5 (noting Senator Leahy's remarks that "[i]t is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home."). Disclosing the title of a video review course threatens that interest as much as the name of

13

any particular video.  This understanding has additional salience in the First Circuit, given that court's broad construction of the term "personally identifiable information" in *Yershov*, 820 F.3d at 486. Moreover, this approach comports with the statutory text, as the phrase "specific video materials or services" is rendered in the plural and is ***not*** limited to specific videos, but also encompasses video materials and services. *See* 18 U.S.C. § 2710(a)(3).[5]

Several cases cited by Defendant are both factually and procedurally inapposite.  For example, *United States v. Shultz* is a criminal case involving a government subpoena to internet service providers for the identification of usernames, phone numbers, email addresses, IP addresses—a dramatically different context and application of the statute.  No. 16-10107-01-EFM, 2018 WL 534333 (D. Kan. Jan. 24, 2018).  Equally removed, *Fed. Trade Comm'n v. Amazon.com, Inc.*, involved a motion to compel appropriate discovery responses by the Federal Trade Commission against Amazon.  No. C14-1038-JCC, 2015 WL 11256312, at *2 (W.D. Wash. Aug. 3, 2015).  These cases are not even in the same ballpark as this one.

Defendant's other citations fare no better.  *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284-85 (S.D.N.Y. 2023) was directly addressed in *Kueppers*, which described it as an "outlier" and wherein the court concluded "we agree with the majority of courts that have held to the contrary." *Id*. at 7 n.2.  Courts have overwhelmingly relegated *Martin* to a lonely corner of VPPA jurisprudence. *See, e.g.*, *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *3 (N.D. Cal. July 28, 2023) (declining to follow *Martin*); *Sellers*, 2023 WL 4850180 at *3 (same); *Lamb v. Forbes*

---

[5] Defendant misstates the relevant statutory language, saying 8 U.S.C. § 2710(a)(3) "require[es] disclosure of 'specific' videos 'requested or obtained.'"  ECF No. 29 at 13.  It does not.  Rather, it requires, through its definition of "personally identifiable information," disclose of "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider."  18 U.S.C. § 2710(a)(3) (emphasis added).

*Media LLC*, No. 22-CV-06319-ALC, 2023 WL 6318033, at *10 n.3 (S.D.N.Y. Sept. 28, 2023) (same); *Collins*, 721 F. Supp. 3d at 288 (same).

Finally, *Golden v. NBCUniversal Media, LLC* actually supports Plaintiff's position. *See* ECF No. 29 at 13 (citing 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023)). That court denied the defendant's motion to dismiss on claims highly analogous to Plaintiff's own. It stated: "as the case law above overwhelmingly holds, a complaint ***need not allege the disclosure of specific video titles***; rather, the disclosure together of the user's Facebook IDs and the URLs of the videos the user accessed suffices." *Id*. at 160 n.10 (emphasis added). *Id*. Defendant misreads *Golden*'s statement that the plaintiffs there *did* allege disclosure of video names to *require* such a disclosure—and, in doing so, entirely omits the portion of the opinion which rebuts Defendant's own argument in plain terms. *See d*. (specifically distinguishing and criticizing *Martin*).[6]

Plaintiff has plausibly alleged Defendant's disclosure of her "personally identifiable information," including "specific video materials or services" within the meaning of the VPPA. Defendant's Motion should be denied.

### ii.  The FAC Adequately Alleges Defendant's Disclosures do not Fall within a Statutory Exception

The VPPA's statutory exceptions permit a video tape service provider to disclose personally identifiable information: (A) to the consumer; (B) to any person with the "informed written consent" of the consumer; (C) to a law enforcement agency under a warrant; (D) to anyone, if the disclosure is limited to names and addresses and "for the exclusive use of marketing goods and services directly

---

[6] *Golden* also helpfully stated that "Courts have uniformly held Facebook IDs to constitute PII under the VPPA . . . ." *Id*. If a person's Facebook ID—which is a string of numbers associated with their Facebook profile—is sufficiently tied to their identity to "uniformly" count as a "personally identifying information," then surely the title of a video review course describing the specific subject matter of the videos contained therein constitutes "specific video materials or services" within the meaning of the VPPA. *See id*.

to the consumer"; (E) "to any person if the disclosure is incident to the ordinary course of business of the video tape service provider;" or (F) pursuant to a court order. *See* 18 U.S.C. § 2710(b)(2)(A)–(F).

Defendant's disclosure does not fall within the "Exclusive Use of Marketing Goods and Services," *see* 18 U.S.C. § 2710(b)(2)(D), though Defendant argues otherwise. This exception provides:

> (2) A video tape service provider may disclose personally identifiable information concerning any consumer—
>
> (D) to any person *if the disclosure is solely of the names and addresses of consumers* and if—
>
> (i) the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and
>
> (ii) the disclosure does not identify the title, description, or subject matter of any video tapes or other audio visual material; however, the subject matter of such materials may be disclosed *if the disclosure is for the exclusive use of marketing goods and services directly to the consumer*;

*Id.* (emphasis added). There are two simple reasons why this exception does not apply. First, the FAC alleges that Defendant disclosed far more than just Plaintiff's name and address. *See* 18 U.S.C. § 2710(b)(2)(D). It alleges disclosures of:

- the names of the video review courses requested or obtained by Plaintiff, to both Meta and Google. ECF No. 27, ¶¶ 67-84, 103-108.

- additional "event data" associated with the purchase to Meta and Google. *See id.*

- Plaintiff's Facebook ID to Meta. *See, e.g.*, *id.* at ¶¶ 103-108.

- Plaintiff's email address and phone number to Google. *See, e.g.*, *id.* at ¶¶ 67-84.

Obviously, that is more than Plaintiff's name and address. This takes Plaintiff's claim out of the scope of the exception. *See e.g., Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (finding that subparagraph (D) does not apply because "[t]he information provided was not limited to

16

Daniel's name and address . . . Instead, the disclosure was of Daniel's history of renting pornographic videotapes and included the specific titles of those videos."); *In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *7 (D.N.J. July 2, 2014) (similar).

Second, the FAC alleges that the disclosures were not for the "exclusive use of marketing goods and services directly to the consumer." *See* 18 U.S.C. § 2710(b)(2)(D)(ii). Defendant was also motivated by increased revenue, user tracking, and measuring analytics when it decided to disclose its consumers' personally identifiable information to Meta and Google. *See* ECF No. 27 at ¶¶ 42, 89, 101. These uses are not "exclusive" to marketing, nor exclusive to marketing to the "consumer" about whom the disclosures pertained, *see id.* at ¶¶ 59-66, 86-101, and they also bring Plaintiffs' claims outside the scope of the exception. *See e.g., Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 32 (D. Mass. 2024) ("The alleged uses of the information here – "marketing, advertising, and analytics" – do not fall within the exception's narrow list of permissible uses.").[7]

As a final matter, neither Plaintiff nor any consumer consented to or had the ability to consent to Defendant's disclosure of their information as required by the VPPA because they were not required to assent to any privacy policy before purchasing from Defendant's websites. *See* ECF No. 27 at ¶¶ 6, 16, 131. The FAC does not even reference or rely upon the Privacy Policy that Defendant requests judicial notice of. Therefore, the Privacy Policy website is not incorporated by reference nor is it central to Plaintiff's claim. *See e.g., Channing Bete Co., Inc. v. Greenberg*, No.

---

[7] To the extent that the Motion relies on Plaintiff's prior complaint, the Court should disregard such references because, as established by the First Circuit, "[a]n amended complaint, once filed, normally supersedes the antecedent complaint" and renders the prior complaint "a dead letter." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Further, Defendant's disclosure to third parties for their own storage, resale, and advertising of personal information does not fall within the scope of the permissible exception either.

3:19-CV-30032-MGM, 2022 WL 43692, at *10 (D. Mass. Jan. 5, 2022); *cf. Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993).[8]

Even if the Court were to consider the various websites, it cannot take judicial notice of the truth of statements contained therein; the Court can only take notice that the websites exist, not the information on them. *See e.g., Davison v. Loudoun Cnty. Bd. of Supervisors*, No. 1:16CV932 (JCC/IDD), 2016 WL 4801617, at *4 (E.D. Va. Sept. 14, 2016) (refusing to take judicial notice of screenshots of the County's Facebook page); *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F.Supp.3d 728, 735 n.2 (N.D. Cal. 2023) (taking judicial notice of the existence of a profile but refusing to consider any statement therein); *Sterling v. Feek*, No. 3:22-CV-05250, 2022 WL 16699191, at *8 (W.D. Wash. Nov. 3, 2022) (same). Judicial notice is inappropriate.

No VPPA exception applies to Plaintiff's claim. The Motion should be denied.

### iii. The FAC Adequately Alleges that Defendant is a Videotape Service Provider

The VPPA defines "videotape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." *See* 18 U.S.C. 2710 (a)(4). The First Circuit has not yet addressed the standard for determining when a defendant qualifies as a "videotape service provider," and other courts are divided on this issue. Some courts follow a two-part test, which requires that

---

[8] Judicial notice is also inappropriate for all websites offered by Defendant for an independent reason: the accuracy of these materials is disputed. Defense counsel's declaration confirms that the websites were visited and a copy was attached as each website appeared "on April 4, 2025", which is outside the period of time relevant to the claim asserted in FAC. Defendant has offered no evidence that the websites appeared in the same way as they did in March 2024 (when Plaintiff purchased) or between January 14, 2023 and January 14, 2025 (the class period). Therefore, judicial notice is inappropriate on this basis alone. *See e.g., Harris*, 662 F. Supp. 3d at 1335 (declining to take judicial notice of websites linked in a defendant's motion to dismiss a VPPA case for similar reasons); *Hill v. R.J. Reynolds Tobacco Co.*, 44 F.Supp.2d 837, 844–845 (W.D. Ky. 1999) (refusing to take judicial notice of the common knowledge of the health risks of smoking before 1969, which preceded the relevant time period).

the plaintiff allege facts supporting the inference that (1) the defendant is "in the business of delivering video content" and (2) the defendant's product is not only "substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 692152, at *8 (S.D.N.Y. Mar. 4, 2025). Other courts simply require that a plaintiff allege the defendant is "in the business of delivering video content." *See Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 n.2 (N.D Ga. 2022); *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022). The FAC easily satisfies either test.

The FAC alleges "Defendant operates and maintains a family of Websites where it sells access to prerecorded video content, including video review courses covering a wide range of subjects." ECF No. 27 at ¶ 19. It then provides many examples of the "prerecorded video content" offered on Defendant's websites, which include test preparation courses, review courses, standalone video courses, modules, and video course packages. *See id.* at ¶¶ 19, 22, 48. It specifically alleges that, before consumers even reach the checkout screen to purchase a prerecorded video, Defendant offers promotional videos explaining the contents of the prerecorded video courses to ensure consumers complete their purchase. *See id.* at ¶ 53. It alleges that Defendant's websites operate as an online video storefront, processing transactions from the consumer's initial click through purchase and delivery of the prerecorded video, and that Defendant's websites are designed to facilitate those sales. *See id.* at ¶¶ 69-75, 104-07. It alleges that Defendant was actively involved in the sale of prerecorded video content because, when each consumer "purchased access to a video or a video review course from one of Defendant's Websites," those materials were "sold and delivered to them by Defendant." *See id.* at ¶ 127.

These allegations are enough to satisfy the more stringent two-part test articulated in *In re Vizio*. The FAC alleges that Defendant's Websites, like the Smart TVs in *Vizio*, are intimately involved in the sale and delivery of video content to consumers because they "created a supporting ecosystem to seamlessly deliver video content to consumers." *See In re Vizio*, 238 F. Supp. 3d at 1222. This conclusion is supported by the decisions of other courts applying that test. *See Stark v. Patreon, Inc.* ["*Stark I*"], 635 F.Supp.3d 841, 852 (N.D. Cal. 2022); *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024).

The Court should not apply the *Vizio* test here. In *Rancourt*, Judge Burroughs from this Court rejected the *Vizio* test for being "difficult to apply and not in keeping with the plain language or the intended scope of the statute." *Rancourt v. Meredith Corp.*, No. 22-CV-10696-ADB, 2024 WL 381344, at *14 (D. Mass. Feb. 1, 2024). Judge Burroughs nevertheless found that the defendant in that case was a "videotape service provider" under either test because the app in question "was built in a way that allows users to watch videos within the App[,]" which design was "not an accidental feature of the App and likely required considerable effort by designers and developers to enable." *See id.* The same embedding of videos is true of the video review course and standalone videos offered for sale by the Defendant here. The Motion should be denied.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety because Plaintiff has sufficiently alleged each element of her and the Putative class members' VPPA claims.

Dated: June 17, 2025

Respectfully submitted,

By: _/s/ Elliot O. Jackson_ (_pro hac vice_)
Elliot O. Jackson, FL Bar No. #1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

**HEDIN LLP**

Tyler K. Somes (_pro hac vice_)
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, D.C. 20005
Telephone:    (202) 900-3332
Facsimile:    (305) 200-8801
tsomes@hedinllp.com

William F. Sinnott, BBO #547423
B. Stephanie Siegmann, BBO #638257
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
wsinnott@hinckleyallen.com
ssiegmann@hinckleyallen.com
Tel: (617) 345-9000
Fax: (617) 345-9020

_Counsel for Plaintiff and Putative Class_